ANTONIO ROMERO CABRERA, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, demandada, y JUAN MÁRQUEZ RIVERA, obrero lesionado.

Núm. 200.—*Sometido:* Junio 17, 1940. *Resuelto:* Julio 19, 1940.

*Miguel A. Muñoz,* abogado del recurrente; *M. León Parra,* abogado de la Comisión demandada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Éste es un recurso de revisión interpuesto por un patrono contra la decisión de la Comisión Industrial declarando que

dicho patrono debe satisfacer a cierto obrero determinada indemnización.

Alega el recurrente que la Comisión erró al resolver que el obrero era uno de los comprendidos en el estatuto, al decidir que el recurrente era el patrono del obrero con obligación de asegurarlo y al declarar al recurrente responsable de los daños que el obrero sufriera con motivo del accidente.

De los autos originales elevados por la Comisión resulta que el 2 de febrero de 1939 el obrero Juan Márquez Rivera archivó ante ella su petición exponiendo que el 5 de junio de 1938 sufrió la fractura de su pierna derecha mientras trabajaba para el patrono Antonio Romero—el recurrente— como peón de un *truck* de la propiedad del patrono.

Pidió la Comisión informe sobre el *status* del patrono al Administrador del Fondo del Seguro del Estado y éste le contestó que dicho patrono para el año 1937–38 en que estaba comprendido el accidente figuró asegurado para el transporte de pasajeros de guaguas, claves 7382 y 8385, pero no para el riesgo de *truck*, clave 7219. También le informó que había fijado la suma de ochocientos dólares para asegurar la efectividad de la compensación que pudiera concederse.

Al ser el patrono notificado compareció ante la Comisión alegando que el caso no caía dentro de su jurisdicción por no tratarse de un accidente del trabajo. Se abrió la investigación correspondiente y refiriéndose al resultado de la misma la Comisión, después de resumir y analizar los procedimientos habidos y la evidencia de una y otra parte, se expresó como sigue:

"De la prueba se desprende que Juan Márquez Rivera hacía como tres años que venía trabajando en el *truck* del Sr. Antonio Romero Cabrera, en calidad de peón de carga. Faustino Soto, en quien depositaba el Sr. Romero Cabrera la facultad de emplear los peones del *truck* declaró en calidad de testigo del patrono que el día del accidente él y Márquez (pág. 40 Réc.) iban a buscar un peón, y que él necesitaba a Márquez; añadiendo a preguntas del obrero que el día del accidente él le echó gasolina al *truck* y Juan Márquez Rivera le echó agua. Estuvo conforme también en que el

día del accidente, después de haber ocurrido el mismo a Juan Márquez Rivera, había invitado a Nicolás Rosario para que sustituyera al primero en el viaje que iban a dar a la Sierra. En ningún momento presentó el patrono prueba alguna en contrario a lo expuesto por su propio testigo Faustino Soto en virtud de todo lo cual creemos que ese día del accidente Juan Márquez Rivera estaba trabajando.

"Juan Márquez Rivera en los momentos de recibir los primeros auxilios médicos olía a alcohol un poquito (véase declaración de la Sra. Jesusa Colón, pág. 7 R.V.P. 4/20/39) y el Dr. Hilario Caso clasificó el estado del paciente como de embriaguez. La alegada embriaguez de Juan Márquez Rivera, sin embargo, no parece que le impedía realizar su labor, pues si recordamos la declaración de Faustino Soto, Juan Márquez Rivera fué quien le echó agua al *truck* antes de ocurrir el accidente, y, en los momentos en que éste ocurriera, toda la prueba demuestra que Juan Márquez Rivera se encontraba ocupando el sitio que habitualmente ocupaba en el *truck* cuando estaba trabajando... El patrono en este caso no produjo la prueba necesaria que nos convenciera que el estado de embriaguez de Juan Márquez Rivera fuera la causa del accidente, y estudiada detenidamente toda la evidencia ofrecida consideramos que aun cuando Juan Márquez Rivera hubiera tomado licor, sin embargo esto no demuestra ni prueba que ese hecho fué la causa del accidente.

"  .         .         .         .         .         .         .         .

"Sostiene en su alegato el abogado del patrono que Faustino Soto hace su negocio de transporte sin la supervisión, sin la intervención y sin la dirección de Antonio Romero Cabrera, dueño del *truck*. Dice en su alegato el patrono que lo único es que en cuanto a los gastos del negocio éstos se pagaban de lo que producía el mismo negocio, incluyéndose aceite, gasolina, sueldos de peones, y que entonces Faustino Soto cobraba el 15 por ciento de lo que hiciera por cada flete que llevara.

"Esto demuestra a nuestro juicio, que Faustino Soto no era un patrono independiente. Faustino Soto, no hay duda, gozaba de ciertas condiciones superiores a las de aquellos obreros que trabajaban en el *truck* de Antonio Romero Cabrera, pero era un obrero al servicio del patrono Antonio Romero Cabrera.

"  .         .         .         .         .         .         .

"Por las razones expuestas la Comisión Industrial RESUELVE que Juan Márquez Rivera era un obrero al servicio del patrono Antonio Romero Cabrera para la fecha en que sufrió el accidente;

"Que el patrono Antonio Romero Cabrera estaba obligado a asegurar a los obreros que trabajaban en el *truck* de su propiedad de la misma manera que tiene asegurados a los obreros que se emplean en sus guaguas;

"Que el obrero Juan Márquez Rivera sufrió un accidente que le provino de un acto o función inherente a su trabajo y le ocurrió en el curso de éste y como consecuencia del mismo por lo cual el caso es compensable de acuerdo con la Ley 45 de abril 18 de 1935 y el patrono Antonio Romero Cabrera es responsable de dicho accidente;

"Que el obrero tiene derecho por su incapacidad parcial permanente consistente en la pérdida de un 66⅔ por ciento de la pierna derecha por el tercio superior de la misma a la compensación que provee la ley en adición a sus compensaciones semanales computadas durante el período que estuvo bajo tratamiento e imposibilitado de trabajar, debiéndose descontar del montante de la compensación que corresponde al obrero la suma de $174.50 que el patrono proveyó al obrero mientras estuvo bajo tratamiento médico; que además de la compensación que corresponde al obrero, el patrono debe pagar los gastos incurridos por la Comisión Industrial en este caso.

"Se ordena al Administrador del Fondo del Seguro del Estado determine la compensación que proceda más los gastos en el caso y certifique su decisión al Tesorero de Puerto Rico, para que éste cobre al patrono dicha compensación y gastos de acuerdo con lo que dispone el Artículo 15 de la Ley 45 de abril 18 de 1935.''

La indemnización a satisfacer fué liquidada así:

| | |
|---|---:|
| "Jornales perdidos para el obrero | $32.00 |
| "Compensación por incapacidad | 450.00 |
| "Compensación total para el obrero | $482.00 |
| "Anticipado por el patrono al obrero | 174.50 |
| "Remanente para el obrero | $307.50 |
| "Vista pública Comisión Industrial | $78.50 |
| "Gastos de viajes Comisión Industrial | 10.70 |
| "Embargo | 1.00 |
| "Gastos de Administración Fondo del Estado | 1.50 |
| "Gastos de Administración Comisión Industrial | 5.00 |
| "Total | $404.20 |

358

■ Veamos si el accidente está o no comprendido dentro del estatuto.

El artículo 4 de la ley aplicable—Ley núm. 45 de 1935, págs. 251 y 273—determina que no son accidentes del trabajo entre otros los que ocurren "Estando el obrero o empleado embriagado, siempre que la embriaguez fuere la causa del accidente."

Como cuestión de hecho sabemos que la Comisión concluyó que si bien había signos de embriaguez por parte del obrero, esos signos no demostraban que el obrero estuviera embriagado de tal modo que le fuera imposible trabajar habiendo por el contrario realizado actos demostrativos de que lo estaba, y no se nos ha demostrado que la Comisión estuviera errada en su criterio.

■■ ¿Se trata de un obrero al servicio de un contratista independiente?

Sosteniendo la afirmativa alega el recurrente que si se examina el récord se verá que Soto hacía el negocio de transporte con completa independencia y sin su intervención, ya que contrataba la carga por sí mismo con quien quería y para cualquier punto de la isla, fijando la compensación y cobrándola, siendo él el que empleaba los peones que necesitaba. Cita abundante jurisprudencia, haciendo énfasis en la establecida en los casos de *Fidelity & C. Co.* v. *Industrial Acc. Com.*, 191 Cal. 404, *Luckie* v. *Diamond Coal Co.*, 183 P. 178, 183, y en la nota que aparece a las páginas 1312 a 1319 del volumen 43 A.L.R.

En el primero de los casos invocados por el recurrente, o sea en el de *Fidelity & C. Co.* v. *Industrial Acc. Com.*, 191 Cal. 404, se resolvió que:

"Cuando una parte que se dedica al negocio de transportación de carga por medio de automóviles entre determinados puntos, contrata con otra, arrendando sus servicios exclusivos para transportar carga durante un período determinado, quedando obligada la segunda parte a proveer su propio camión y carro de remolque

(*trailer*), a ocuparse de reparar éstos, pagar todos los gastos de explotación inclusive salarios de conductores y a hacer un viaje cada veinticuatro horas, salvo ser demorada por algún percance, no debiendo la compensación ser menor de determinada suma por cada cien libras de carga transportadas, con una cantidad mensual mínima, la parte (la dueña del negocio) con la obligación de conseguir los fletes de carga a ser transportados, facilitar almacenes, y asumir toda la responsabilidad de la facturación y cobro de los precios, por lo cual debía el dueño del camión pagarle determinado por ciento de su entrada bruta, debiendo la primera parte ocuparse de y llevar a cabo todos los servicios relacionados con la carga, descarga, distribución y reunión de los fletes, para lo cual habría de tener el uso del camión y había de ser pagada una suma mensual por el dueño del camión, siendo el contrato transferible a un tercero, sujeto a la aprobación de la primera parte, como el dueño del camión, debido a su contrato se hallaba bajo el control de la primera parte respecto al resultado de su trabajo solamente, y no respecto a los medios de alcanzar tal resultado, él era un contratista independiente.''

Y en el curso de la opinión se dijo:

''Al determinarse en un caso dado, si una persona era un empleado o un contratista independiente, usualmente concurren varias circunstancias favorables a una conclusión y otras circunstancias persuasivas de la conclusión opuesta. Pero un análisis de los casos demuestra claramente que el factor determinante se encuentra generalmente en la solución de la siguiente cuestión: ¿Quién tiene el poder o control, no en cuanto al resultado del trabajo solamente, sino sobre los medios y método por los cuales se alcanzó tal resultado?.....

''Se conceptúa patrono a aquel que tiene la suprema elección, control y dirección del empleado y cuya voluntad el empleado representa, no meramente en los resultados finales del trabajo, sino en todos los detalles. La manera jurídica de determinar la cuestión se halla expuesta por Thompson en la forma siguiente: 'Un contratista independiente dentro del significado de esta regla, es el que presta servicios en el curso de un empleo, representando la voluntad de su patrono sólo en cuanto al resultado de su trabajo, y no en cuanto a los medios de llevarlo a efecto.' (1 Thompson on Negligence, secs. 621, 622).''

El caso se decidió por mayoría, disintiendo tres de los siete jueces de la corte.

En el segundo, o sea el de *Luckie* v. *Diamond Coal Co.*, 183 P. 178, también de California pero no de la Corte Suprema sino de la Corte de Distrito de Apelaciones del Segundo Distrito, sección 2, se resolvió que:

"El comprador y arrendatario condicional de un camión de motor, quien se halla sujeto a un contrato de arrendamiento de servicios para transportar carbón para el arrendador, quien no tiene derecho a dirigir la forma en que debe verificarse la transportación, es un contratista independiente, por la negligencia de cuyos empleados no responde el arrendador.

"La doctrina de *respondeat superior* es de aplicación sólo cuando se demuestra que la relación de patrono y empleado existe entre el causante de la negligencia (*wrongdoer*) y la persona a quien se trata de imputar responsabilidad por el resultado del daño al tiempo y respecto a la propia transacción de la cual surge el perjuicio."

Por último, en la nota de 43 A.L.R. 1312 a 1319 invocada, se establecen los siguientes principios y se cita lo pertinente de los casos de los cuales se toman, a saber:

"Entre todas las circunstancias relacionadas con la determinación de si un dueño de camiones es un contratista independiente o un empleado, el derecho del patrón a controlar al dueño del camión es la más decisiva...."

"Cuando el patrono asume el control sobre la manera y medios de hacer el trabajo, más bien que sobre el resultado, el dueño del camión es un empleado antes que un contratista independiente..."

"Cuando el dueño del camión es investido del derecho a controlar los medios y métodos para llevar a cabo el trabajo y responde a su patrón sólo por el resultado final, entonces el dueño del camión es un contratista independiente más bien que un empleado..."

"En muchos de los casos, el derecho de cualquiera de las partes a terminar la relación a voluntad, sin incurrir en responsabilidad respecto a la otra, lo que incluye el derecho del patrono a despedir al dueño del camión en cualquier momento, es considerado como el factor principal en la determinación de la prueba primordial, esto es, que el patrono tiene el derecho a controlar al dueño del camión y que por consiguiente este último es un empleado más bien que un contratista independiente..."

"El hecho de que el contrato exija el cumplimiento de un trabajo específico distinguido del trabajo en general, es una circunstancia indicativa de que el empleo es independiente..."

"Cuando bajo un contrato de arrendamiento de servicios, el dueño del camión no se halla obligado a hacer personalmente el trabajo, sino que puede emplear substitutos a ese fin, el empleo es generalmente uno independiente..."

"El mero hecho de que un dueño de camión provea y cuide de un camión, no afecta su *status* como un empleado, aunque pueda llegarse a una opuesta conclusión en el caso de una persona dedicada al negocio de camiones (*trucking business*) quien facilitó y tuvo a su cargo un número de camiones. (Citas.)"

"El hecho de que el dueño del camión en cuestión fuera un sirviente del patrono antes de emprender sus deberes como *truckman,* es una circunstancia indicativa de una continuación de la relación de patrono y empleado. (Citas.)..."

"El hecho de que el dueño del camión rindiese servicios a otras personas puede ser una circunstancia que indica independencia de empleo, pero no es en forma alguna concluyente..."

Como puede verse, la cuestión envuelta se ha presentado muchas veces ante los tribunales y cuando está en la línea no es de fácil solución. Examinados los hechos del caso a la luz de la jurisprudencia citada hay que reconocer que no está desprovista de fundamento la conclusión de que Soto Nieves era un contratista independiente.

Sin embargo, tampoco está desprovista de fundamento la conclusión a que llegara la Comisión. Faustino Soto Nieves declaró, en parte, como sigue:

"Pues yo hace cuatro años que estoy con el señor Romero y él me da ese *truck* y yo trabajo a un tanto por ciento; yo busco la carga y cuando la cobro entonces liquido la gasolina, el aceite, los peones y cojo mi tanto por ciento, y el resto lo entrego al señor Romero." (Pág. 33 Réc.) Al explicar la forma en que dispone del dinero dice: "El señor Romero tiene un empleado en la oficina y yo voy a la oficina para que él lo distribuya, se paga la gasolina, se paga el dinero de los peones, yo cojo mi por ciento y lo demás se entrega en la oficina del Sr. Romero, yo cojo un quince por ciento." (Pág. 35 Réc.); que a los peones se les paga 50 centavos por viaje; que él paga los peones pero va donde el empleado de

Romero para que él liquide (Pág. 43 Réc.); que él vive en una parte de la carretera de Bayamón a Comerío y tiene el *truck* allí bajo su control; que trabaja con él como le da la gana. (Pág. 36 Réc.)

Y Márquez, el obrero lesionado, dijo:

"P.—¿Usted no sabe si es Faustino que contrata los peones?— R.—No, señor, no es el que los contrata.—P.—¿Romero contrató al otro peón? ¿Usted dice que el que lo contrató a usted fué Romero y no Faustino?—R.—Sí, señor, el señor don Antonio Romero Cabrera me llamó a mí para que trabajara en ese *truck*."

La evidencia no suple con claridad y en detalle todos los requisitos que se han tomado en consideración por los tribunales para resolver la cuestión en la afirmativa o en la negativa. Bajo esas circunstancias e incumbiendo la prueba al que afirma—y el que afirma que aquí se trata de un contratista independiente es el patrono—creemos que debemos declarar no haber lugar a la revisión solicitada.

Más que de un contratista independiente parece que se trata aquí de un negocio en común en que Romero pone el *truck* y Soto el trabajo, siendo Romero el que lo controla finalmente aun cuando Soto tiene todas aquellas facultades necesarias para el mejor éxito del mismo. Y en ese caso no hay duda de que Romero es el patrono que debió cuidarse de asegurar sus obreros y el que en todo caso responde del accidente.

*Debe declararse no haber lugar a la revisión solicitada.*

El Juez Asociado Sr. De Jesús no intervino.