Ramón Montaner, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* Comisión Industrial de Puerto Rico, Etc., demandada, y José Ortiz Rivera, peticionario ante la Comisión Industrial. El Mismo *v.* La Misma, e Higinio Valle y Esmeralda Crespo, peticionarios ante la Comisión Industrial.

Núms. 226 y 227.—*Sometidos:* Julio 23, 1941. *Resueltos:* Julio 26, 1941.

*Hon. Procurador General George A. Malcolm, Emilio de Aldrey, Procurador General Auxiliar, y Víctor J. Vidal González y G.*

*Atiles Moréu,* abogados éstos del Fondo del Estado, abogados del recurrente; *Luis Mercader, V. Brunet* y *J. L. Novas,* abogados, respectivamente, de los patronos; *J. Pedro Miranda* y *E. Soldevila,* abogados, respectivamente, de los beneficiarios.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Estos dos recursos envuelven la misma cuestión a resolver, se vieron conjuntamente y serán estudiados en una sola opinión.

Los hechos declarados probados por la comisión en el caso de Ortiz, recurso núm. 226, son los siguientes:

"Que Andrés Ortiz Vélez era un obrero empleado por Pablo Pagán para trabajar en un *truck* propiedad de este último;

"Que Pablo Pagán había contratado los servicios de un truck de su propiedad para que el Sr. José Vives pudiera arrastrar caña de un barrio de la municipalidad de Utuado a la grúa de la Central Cambalache en otro barrio;

"Que el Sr. José Vives tenía un contrato con la Central Cambalache para el arrastre de caña, utilizando para ello trucks de varias personas entre las cuales se encontraba el Sr. Pablo Pagán;

"Que Andrés Ortiz Vélez sufrió un accidente el día 28 de abril de 1939, mientras trabajaba en el truck del Sr. Pablo Pagán, transportando caña propiedad de la Central Cambalache, el cual accidente le provino de un acto o función inherente a su trabajo y le ocurrió en el curso de éste y como consecuencia del mismo, privándolo de la vida;

"Que ni el Sr. Pablo Pagán, dueño del truck, ni el Sr. José Vives, persona que contrató los servicios del truck para el arrastre de caña a la Central Cambalache, estaban asegurados con el Fondo del Estado el 28 de abril de 1939, mientras realizaban el trabajo ajustado o contratado de arrastre de caña para la Central Cambalache;

"Que para abril 28, 1939, la Central Cambalache, dueña de las cañas, era un patrono asegurado con el Fondo del Seguro del Estado."

Y concluyó:

"Que no estando asegurado contra accidentes del trabajo el contratista independiente, Sr. José Vives, con quien ajustó o contrató el patrono principal, Central Cambalache, y estando este último debidamente asegurado de acuerdo con la ley núm. 45 de abril 18, 1935, el patrono principal y asegurado, Central Cambalache, es res-

ponsable del accidente ocurrídole al obrero Andrés Ortiz Vélez y el Fondo del Estado deberá pagar la compensación que por ley le corresponde a los que, después de la debida investigación, resulten ser los beneficiarios del obrero occiso.''

En el otro caso o sea el de Higinio Valle y Esmeralda Crespo—recurso núm. 227—los hechos declarados probados por la comisión fueron:

''...El día 8 de marzo de 1940, el obrero Angel Valle trabajaba como auxiliar en un camión marca 'Ford' del patrono no asegurado Martín Linares. El patrono Martín Linares explotaba dos camiones en el acarreo de productos de la tierra y en el arrastre de cañas. Martín Linares convino desde antes del accidente con el patrono asegurado Juan Estades el arrimo de las cañas de éste desde su finca hasta la central 'Los Caños'. El patrono Juan Estades declaró el día de la vista que él se dedica al cultivo de la caña y las mismas son molidas por la central 'Los Caños'; que tiene que transportar sus cañas desde su finca hasta el molino de la Central 'Los Caños', para lo cual emplea sus propios camiones y camiones pertenecientes a otras personas, con las cuales contrata a razón de sesenta centavos la tonelada de caña arrimada a la central....El día del accidente, un truck perteneciente a Martín Linares, con quien contrató o ajustó el arrastre de cañas de Juan Estades, se dirigía cargado de cañas propiedad de Juan Estades hacia la central 'Los Caños'. Fué en esa ocasión que se volcó el camión que conducía las cañas de Juan Estades que se lesionó el obrero Angel Valle mientras trabajaba en dicho camión, y a consecuencia de cuyo accidente o lesión perdió la vida Angel Valle.''

Concluyendo que:

''...Martín Linares realizaba un trabajo relacionado directamente con el negocio de Juan Estades. Martín Linares es en este caso un contratista independiente que se encontraba no asegurado para la fecha del accidente y que realizaba un trabajo, contrato o ajuste relacionado con el negocio o industria del patrono Juan Estades, dueño de la finca y de las cañas y patrono debidamente asegurado de acuerdo con la ley 45 de abril 18 de 1935.

''A nuestro juicio el artículo 19 de la ley 45 de abril 18 de 1935 resuelve esta controversia.''

En ambos recursos el Administrador del Fondo del Seguro del Estado recurrente presenta el problema a decidir,

con la sola excepción de que en el primero se refiere a José Pagán y en el segundo a Martín Linares, en términos exactamente iguales, como sigue:

"En el caso *Montaner, Admor.* v. *Comisión Industrial*, 57 D.P.R. 272 (panfleto núm. 2), se planteó la situación de un dueño de taller de mecánica, Antonio Rivera, quien hizo para la compañía expendedora de gasolina, West India Oil Co. la reparación de un tanque. Ocurrió un accidente que le costó la vida a un operario del dueño del taller, y los padres del operario, como beneficiarios de éste, interpusieron reclamación ante el Fondo del Seguro del Estado. Alegamos entonces que Antonio Rivera era dueño de un negocio con vida propia por lo que no podía considerarse el contratista independiente que contempla el artículo 19 de la ley, supra. Este Tribunal sostuvo entonces a la Comisión Industrial y declaró que Antonio Rivera era un contratista independiente, y no estando asegurado con el Fondo del Seguro del Estado, aunque sí la West India Oil Company, la póliza de esta última empresa daba cubierta al obrero lesionado.

"Los argumentos que usamos entonces tienen, sin embargo, más fuerte aplicación al caso presente, donde se trata de un porteador público. Si se resolviera que Pablo Pagán es el contratista o subcontratista que contempla el artículo 19 de la ley supra, obligaríamos a todos los patronos a incluir en su relación de jornales pagados, o nóminas, el total de todo lo que paguen por concepto de transportación de sus materiales, productos y empleados o, en la alternativa, privarse de utilizar ningún porteador público a menos que éste acredite ser patrono asegurado. De no actuar en esa forma, estaría el patrono violando la ley, e incurriendo en delitos que aparejan pena. Incidentalmente se obligaría, en este segundo caso, a todos los porteadores públicos a acogerse a la Ley de Compensaciones por Accidentes del Trabajo independientemente del número de personas a que den empleo efectivo. ¿Es tal el alcance de la ley? No nos lo parece, y a fin de que este alto Tribunal haga luz sobre la situación y podamos orientar sobre base firme las futuras actuaciones del Fondo del Estado, planteamos el problema."

En el caso de *Montaner, Admor.* v. *Comisión Industrial*, 57 D.P.R. 272, se estudia lo que se entiende por contratista independiente, citándose entre otras, la siguiente definición:

"Cuando se celebra un contrato de trabajo que ha de ser realizado por otro, en el que el dueño (*contractee*) no se reserva la facultad de determinar los medios de hacerlo, sino simplemente exige el resultado del trabajo, el empleo es independiente y establece la relación de dueño (*contractee*) y contratista (*contractor*) y no la de patrono y empleado." *Penn. R. R. Co.* v. *Allegheny County*, 188 A. 178, 179, 324 Pa. 216.

Con arreglo a ella no hay duda alguna de que la comisión actuó correctamente al resolver que José Vives y Pablo Pagán en el primer caso y Martín Linares en el segundo, eran contratistas independientes de la Central Cambalache y de Juan Estades, respectivamente.

No estando dichos contratistas independientes asegurados y estándolo la Central Cambalache y Juan Estades con quienes contrataron y para quienes realizaban el trabajo contratado por medio de sus obreros, entre los cuales se encontraban los que fallecieron a causa de accidentes ocurridos dentro del curso del mismo, ¿deben responder de los accidentes los contratistas personalmente, como patronos no asegurados, o responde el seguro de aquellos patronos para quienes ellos y sus obreros trabajaban?

A nuestro juicio responde el seguro, como también correctamente resolvió la comisión. Con ese propósito fué que el legislador puertorriqueño al decretar la ley núm. 45 de 1935, pág. 251, para promover el bienestar de los habitantes del Pueblo de Puerto Rico, en o referente a accidentes que causen la muerte o lesiones, o enfermedades o muerte derivadas de la ocupación de los trabajadores en el curso de su empleo, etc., prescribió en su artículo 19, lo que sigue, sin hacer distinción con respecto a porteadores públicos:

"Todo patrono asegurado al dar cuenta con sus nóminas anuales, deberá incluir en tales nóminas los salarios pagados a todos los obreros y empleados que estuvieren trabajando o fuere a emplear bien por ajuste, o ya bajo una persona con quien ajustó el patrono o bajo un contratista o subcontratista independiente empleado o contratado por dicho patrono, y toda cuenta, o impuesto cobrado por el Estado se basará sobre la nómina corriente del patrono, en las cuales deberán

estar incluídos los trabajadores antes mencionados; *Disponiéndose,* que esta disposición no será aplicable a los patronos para quienes se hiciere trabajo por un contratista independiente que estuviere asegurado como patrono de acuerdo con las disposiciones de esta Ley.''

La ley es clara y terminante. Refiriéndose a la materia que regula, se dice en la obra de Bradbury *sobre Compensaciones a Obreros,* Bradbury's *Workmen's Compensation,* capítulo 9, pág. 264:

''Las leyes de compensaciones a obreros han creado una relación completamente nueva entre principales o contratistas principales y los empleados de contratistas y subcontratistas. Hasta ahora, bajo estas circunstancias, se había sostenido que aquellos que ostensiblemente aparecían como principales o contratistas principales en relación con contratistas y subcontratistas eran en realidad patronos de trabajadores empleados ostensiblemente por contratistas y subcontratistas. En esos casos se resolvió que la relación de principal y agente (master and servant) existía claramente entre el principal o principal contratista y los obreros o empleados directamente nombrados por los contratistas o subcontratistas.

''Pero bajo muchas de las leyes de compensaciones a obreros más modernas los principales o principales contratistas son directamente responsables a los obreros de contratistas o subcontratistas sin considerar para nada la circunstancia de si existe o no la relación de principal y agente (master and servant).

''No todas las leyes de compensaciones a obreros modernas contienen una disposición del carácter antes referido. En muchas de ellas la responsabilidad es condicional. Esto es, en muchas ocasiones, si el contratista o subcontratista ha asegurado y ofrecido la protección a sus obreros bajo una póliza de seguro adecuada, entonces los principales o principales contratistas quedan exentos de toda responsabilidad.''

Nuestra ley, como hemos visto, es condicional. Se aplica solamente en los casos en que el contratista independiente no estuviere asegurado. Lo importante es que en cualquier caso el obrero y los que de él dependen queden garantizados por medio del Fondo del Seguro del Estado.

Parece conveniente transcribir las siguientes palabras de introducción a la nota al *Doherty's Case* de la Corte Su-

prema de Massachusetts, 2 N. E. (2d) 186, que aparecen a la página 581 del volumen 105 del American Law Reports Annotated, 105 A.L.R. 581, porque ellas indican el estado actual de la ley sobre la materia y su propósito tal como ha sido interpretado y fijado por las decisiones de las cortes de justicia. Son así:

"Esta nota es suplemento de la que aparece en 58 A.L.R. 872.

"En un comentario inserto en 78 A.L.R. 493 (Compensaciones a Obreros, sec. 12) que lleva por título 'Contratistas independientes y leyes sobre compensaciones a obreros', se hace referencia a varias notas que discuten materias relacionadas con las aquí envueltas.

"Conforme se expresa en la nota anterior, continuamente se están agregando a las leyes sobre compensaciones a obreros en las diferentes jurisdicciones, disposiciones haciendo a los 'patronos', 'patronos principales', 'contratistas generales', etc., responsables de la indemnización de los empleados de contratistas y subcontratistas independientes, y estas disposiciones varían notablemente en las distintas jurisdicciones.

"Manifestaciones hechas por las diversas cortes en decisiones emitidas con posterioridad a la nota anterior, confirman lo allí expuesto al efecto de que el propósito fundamental de disposiciones de esta índole es proteger a los empleados de subcontratistas que no tienen solvencia económica e impedir que los patronos eludan responsabilidad haciendo a través de contratistas independientes, algo que de lo contrario harían por medio de empleados."

*Los recursos deben ser declarados sin lugar, quedando confirmadas las resoluciones de la Comisión Industrial en ambos casos.*