GUILLERMO ATILES MORÉU, en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; NICOLÁS CALLEJA BETANCOURT, obrero lesionado.

Núm. 380.—*Sometido:* Enero 13, 1948. *Resuelto:* Enero 29, 1948.

*Ángel de Jesús Matos, M. Maldonado Pacheco,* y *Aida Casañas Marengo,* abogados del recurrente; *Víctor A. Fernández Garzot* y *Rogelio Fernández Garzot,* abogados del obrero lesionado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Nicolás Calleja Betancourt, vendedor de los productos de la fábrica de helados PAYCO, mientras conducía dichos productos en un carrito fué arrollado por un camión, sufriendo la fractura de la muñeca izquierda y de la pelvis. El Administrador del Fondo del Seguro del Estado declaró sin lugar la reclamación de compensación por entender que entre el lesionado y el fabricante ''no existe la relación contractual necesaria entre obrero y patrono para considerar al peticionario como un obrero regular asalariado de los que protege la Ley de Compensaciones por Accidentes del Trabajo.'' Apeló el obrero para ante la Comisión Industrial y en junio 25 de 1947 la Comisión dictó su resolución declarando que en el momento del accidente Calleja trabajaba al servicio del patrono Fábrica de Mantecados PAYCO; que el accidente sufrido por Calleja provino de un acto o función inherente a su trabajo o empleo y como consecuencia del mismo; y que el obrero lesionado tenía derecho a la compensación fijada por la ley. Solicitó el Administrador la reconsideración del fallo dictado por la Comisión y habiéndole sido denegada, estableció el presente recurso, alegando que la Comisión erró al resolver que las relaciones entre Calleja y la PAYCO eran las de patrono y empleado y no las de una mera transacción de compraventa entre dichas partes.

Para poder resolver la cuestión planteada es necesario que hagamos una relación sucinta de lo declarado ante la Comisión.

■■ Declaró el obrero lesionado que el día del accidente él conducía un carro-nevera de la fábrica ''PAYCO'', yendo de San Juan hacia Cataño; que la PAYCO le daba el carro para vender los mantecados y le fijaba la ruta, la cual comprendía desde el pueblo de Cataño hasta la parada 20½ en Santurce, donde queda la fábrica, no pudiendo él desviarse de esa ruta porque de salirse de ella el patrono le quitaba

el carro. Las relaciones entre el obrero y la PAYCO fueron descritas por Calleja en la forma siguiente: que él le pedía al patrono $20 de productos y seleccionaba cinco cajas de "Popsicop", pero el patrono siempre le daba siete cajas y él las tenía que aceptar porque de otra manera no le daban mercancías; que a veces pedía $10 de productos y le daban $15, viéndose obligado a tomar lo que el patrono quería y no lo que él deseaba; que a veces pedía una clase de productos y le daban otros, viéndose obligado a sacar para la venta los productos que el patrono quería; que el precio de cinco centavos por cada artículo era fijado por el patrono fabricante, sin que el obrero vendedor pudiese venderlo al público a un precio mayor o menor; que el obrero estaba obligado a ir todas las mañanas, entre 8 y 9, a buscar su carro, para regresar a las 9:30 de la noche a rendir cuentas, y que si así no lo hacía le quitaban el carro o lo castigaban suspediéndole la entrega de mercancías por dos o tres días; que la mercancía sobrante, si está en buenas condiciones se devuelve a la fábrica y si no lo está la pierde el obrero; que él tenía que pagar por cualquier desperfecto que sufriera el carro y por las gomas y tubos que se gastaban por su uso; que estaba, además, obligado a seguir al pie de la letra las intrucciones que le daba el patrono, pues si no lo hacía así lo botaban, y que él ganaba $6 diarios, equivalentes a una comisión de 30 por ciento de las ventas que realizaba por valor de alrededor de $20 al día. Declaró, por último, el lesionado que el fabricante les prohibía a los vendedores ambulantes el uso de licor y el tomar participación en juegos de azar.

José Gayá, dueño de la fábrica de mantecados, declaró que la fábrica está cubierta por una póliza con el Fondo del Seguro del Estado; que Calleja era *su cliente,* porque le compraba sus productos al mismo precio a que la fábrica los vendía al por mayor a otros clientes; que él le facilitaba a los vendedores ambulantes un carrito refrigerador, el cual es necesario para evitar que los helados se derritan; que los

vendedores no están obligados en forma alguna por horarios de entrada o salida en el negocio; que estos clientes tienen rutas fijas para vender la mercancía; que a los vendedores ambulantes no es una comisión de descuento que se les hace por lo que venden, sino que ellos compran al precio de por mayor que pagan los demás clientes que no tienen carritos para vender; que los vendedores ambulantes nunca han figurado en las nóminas como empleados de la fábrica, porque ninguno de ellos tiene sueldo ni comisión fija; que Calleja no fué ni ha sido empleado de su fábrica y que "lo único que percibía Calleja por la venta de los productos que le entregábamos era la comisión que se le daba"; que él veía todos los días a Calleja y sabe que era un vendedor de la fábrica; que no informó al Fondo del Estado sobre el accidente ocurrido a Calleja porque consideraba a éste como un cliente y no como un empleado. Admitió el patrono que los vendedores ambulantes tenían rutas determimimadas, asignadas por la fábrica, y que cuando un vendedor insistía en apartarse de su ruta entonces la fábrica rehusaba entregarle más productos.

Del resumen que hemos hecho de la prueba sometida a la Comisión se desprende que no existe controversia en cuanto a los hechos del caso. Examinemos cuidadosamente esos hechos para que podamos decidir si ellos justifican la conclusión a que llegó la Comisión Industrial.

La fábrica "Payco" vende sus productos, al por mayor, a hoteles, restaurantes, bares y fuentes de soda, a los cuales les facilita un gabinete eléctrico, con la condición de que comprarán los productos de Payco exclusivamente y usarán el gabinete exclusivamente para conservar dichos productos. Las ventas que hace la Payco a los establecimientos que hemos mencionado son a precio fijo y no a base de comisión sobre la cantidad de productos vendida en un día determinado. Algunos de esos clientes pagan la mercancía al serles entregada y a otros se les concede crédito por treinta o sesenta días.

Las relaciones entre los vendedores ambulantes de productos Payco y la fábrica son sustancialmente diferentes a las existentes entre dicha fábrica y los hoteles y demás establecimientos fijos. Los vendedores ambulantes no compran los productos a una hora elegida por ellos, para venderlos dónde, cuándo y al precio que a ellos convenga. De acuerdo con la prueba creída por la Comisión, dichos vendedores están obligados a recibir la mercancía entre 8 y 9 A. M., transportándola en carritos propiedad del fabricante; a rendir cuentas de las ventas realizadas durante un día determinado, antes de las 9:30 de la noche de ese mismo día; a aceptar la clase y cantidad de productos que la fábrica tenga a bien entregarles; a vender dichos productos al precio fijado por la fábrica; a no realizar venta alguna fuera de la ruta asignada por la fábrica; a no tomar licor, ni a participar en juegos de azar.

Es cierto que los vendedores ambulantes no reciben un salario fijo y que la compensación que reciben por su trabajo se determina tomando como base el 30 por ciento del precio de venta de los productos vendidos durante un día determinado. Empero, esa forma de compensación se hace necesaria por la naturaleza de los servicios prestados por el obrero y para la protección de los intereses del fabricante de los productos. Si el vendedor ambulante, quien trabaja fuera de la inspección o supervisión del fabricante o de sus representantes, recibiese por sus servicios un salario fijo, su interés en vender la mayor cantidad posible de productos decaería. La determinación de la compensación a base de una comisión sobre el total de las ventas realizadas durante el día es un incentivo al cual recurre el fabricante para estimular al vededor ambulante para que venda todo lo más posible, sabiendo que su compensación aumentará a medida que las ventas aumenten.

Insiste el Administrador recurrente en que Calleja era un contratista independiente y no un empleado de la Payco.

En la obra *Words and Phrases* (*Permanent Edition,* 1940, Tomo 9, páginas 329 *et seq.*) se define la palabra "contratista" distinguiéndola de la palabra "empleado", así:

"Cuando la persona que emplea a otra puede prescribir lo que se ha de hacer, pero no cómo ha de hacerse ni quién lo hará, la persona que se obligue a hacer el trabajo es un 'contratista' (*contractor*) y no un 'empleado' (*servant*), aunque el trabajo haya de realizarse bajo la dirección y a satisfacción de personas que representan al que emplea. *Joslin* v. *Idaho Times Publishing Co.,* (1935), 53 P.2d 323, 329, 56 Idaho 242."

Horovitz, en su obra *Injury and Death under Workmen's Compensation Laws,* edición de 1944, págs. 232–233, dice:

"Cuando contratos escritos o verbales tienen el propósito directo de convertir en contratistas independientes a los trabajadores, sin ninguna intención fraudulenta, las comisiones y las cortes continúan aplicando la regla del derecho común que sirve de prueba para determinar la relación realmente existente, —la autoridad o derecho o facultad del patrono (*employer*), por virtud de cualquier convenio entre ellos, de controlar a la persona en cuestión, y no el actual ejercicio de ese poder, sin tener en consideración las reglamentaciones del estado o de terceras personas. (*O'Hara's Case,* 310 Mass. 223.)"

La esencia de la controversia en estos casos es si el patrono, por haberlo así convenido con el empleado, tiene el derecho y la autoridad para controlar y dirigir a éste en la realización de su trabajo. *Drillon* v. *Industrial Accident Commissión,* 17 Cal.2d 346. Véase: *National Labor Relations Board* v. *Hearst Publications,* 322 U. S. 111, 88 L. ed. 1170 y *United States* v. *Silk,* 331 U. S. 704.

En la obra Schneider *Workmen's Compensation Law,* Vol. 4, Capítulo 17, secciones 1060–1141, págs. 4–185 se establecen como normas a seguir para determinar si la relación existente entre las partes es la de patrono y empleado, las siguientes:

A. Cuando el patrono tiene el derecho, aun cuando no lo ejercite, de la dirección o control del trabajador.

B. Cuando el trabajo realizado por el trabajador está comprendido dentro del negocio del patrono y no es de naturaleza distinta.

C. Cuando ambas partes están en libertad de terminar sus relaciones en cualquier momento.

D. Inexistencia del derecho del trabajador a delegar en otra persona para realizar su labor.

E. Provisión de equipo, material o ayuda necesaria al negocio por parte del patrono.

Si aplicamos las anteriores reglas a los hechos del caso que estamos considerando, es inescapable la conclusión de que Calleja era un empleado de la fábrica PAYCO. Esta no solamente le facilitaba el carrito para la venta de los productos, si que también determinaba la clase y cantidad de los productos que el vendedor había de recibir cada día para venderlos a los consumidores, trazaba la ruta dentro de la cual debía realizar sus operaciones cada vendedor ambulante, fijaba el precio de venta de los productos y, por último, le dictaba a los vendedores las reglas que debían observar en cuanto a su conducta personal. El hecho de que Calleja fuese compensado por su trabajo a base de un tanto por ciento del total de las ventas diarias es importante, pero no es por sí solo suficiente para que descartando todas las demás circunstancias que hemos señalado resolvamos que las relaciones entre él y la fábrica PAYCO eran las de un contratista independiente.

Esta misma cuestión ha sido considerada por este Tribunal en varios casos y resuelta en contra de la contención del Administrador recurrente. En *Tomás* v. *Comisión Industrial,* 59 D.P.R. 860 resolvimos que "el hecho de que los obreros no cobrasen un jornal diario por su trabajo, sino que la remuneración dependía de la piedra que ellos extraían, no convierte al obrero en un contratista independiente con relación al explotador de la cantera." En *Atiles, Administrador* v. *Comisión Industrial,* 63 D.P.R. 597, los dueños de una finca aportaban la leña con la cual otra per-

sona hacía carbón, el cual, una vez fabricado, se distribuía en la proporción de dos terceras partes para el fabricante y una tercera parte para el dueño de la finca. Éste estaba asegurado en el Fondo del Seguro del Estado. Resolvimos que "la Ley, al referirse al contratista independiente, se refiere siempre a aquél que contrate un trabajo y emplee obreros para realizarlo;" y que "el obrero de este caso no es tal contratista independiente, sino un mero obrero que trabaja por ajuste cuya compensación le es pagada en especie." Véanse: *Shields* v. *William Freihofer Baking Co.* (Pa.) 24 A.2d 54; *Fuller Brush Co.* v. *Industrial Commission of Utah*, 104 P.2d 201, 129 A.L.R. 511.

Por las razones expuestas, opinamos que la Comisión Industrial no erró al resolver que el reclamante Calleja era, en la fecha del accidente, un empleado de la fábrica Payco y, como tal, con derecho a ser compensado de acuerdo con la Ley.

*La resolución recurrida será confirmada.*