ANTONIO MARTÍNEZ, demandante y apelado, *v.* GABINO MARTÍNEZ DÁVILA, demandado y apelante.

Número 11297.

*Sometido:* 2 de mayo de 1955. *Resuelto:* 6 de mayo de 1955.

*Arturo Ortiz Toro* y *Manuel Abréu Castillo,* abogados del apelante; *Miranda Esteve* y *Martínez Álvarez,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

En este caso Gabino Martínez apela de una sentencia dictada por el Tribunal Superior condenándole a pagar a Antonio Martínez, la suma de $600 en concepto de daños y perjuicios, más las costas y $750 para honorarios de abogado. El tribunal sentenciador hizo las siguientes conclusiones de hecho:

"1.—El 18 de mayo de 1951, el demandante Antonio Martínez compró una caja de dulces en el negocio de repostería que tenía y tiene establecido en la Avenida de Diego, de Río Piedras, el demandado Gabino Martínez Dávila.

"2.—Entre los dulces que compró el demandante había de los llamados 'palitos de Jacob'.

"3.—Además del demandante otras personas compraron de los mismos dulces.

"4.—Los dulces que compró el demandante fueron puestos en una caja que decía: 'Repostería el Alcázar de Gabino Martínez'.

"5.—Tanto el demandante como otras personas que comieron de los antes dichos dulces se intoxicaron.

"6.—El demandante, después de haber comido de los dichos dulces, se descompuso el estómago, le dió vómitos y en el curso de la noche del 18 al 19 de mayo de 1951, tuvo necesidad de hacer defecaciones en exceso de lo normal. Como consecuencia del vómito, el exceso de la defecación, le bajó la presión, sudó frío y quedó en un estado de postración viéndose obligado a quedar recluído en cama durante dos días.

"7.—Que esa noche recibió tratamiento médico del Dr. Bernabé Lima Beaz, quien tuvo necesidad de visitarlo dos días después.

"8.—Dulces de los mismos comprados por el demandante fueron sometidos a examen por el Departamento de Salud en-

contrándose que había una gran cantidad de estafilococus aureo hemolíticos en los mismos.

"9.—Los alimentos contaminados con estafilococus aureo hemolíticos producen la enterotoxina. Esta empieza a desarrollarse ocho horas después de haber sido contaminado el alimento.

"10.—Cuando el estafilococus ha producido enterotoxina, al ingerirse alimentos contaminados por los mismos, se producen náuseas, vómitos y defecaciones frecuentes, dos o tres horas después de haberse ingerido las mismas.

"11.—Entre otras personas se intoxicaron al comer de los mismos dulces, el niño Rubén Antonio Villanueva, su señora madre y su hermana.

"12.—La respotería del demadado había dejado de trabajar para la fecha en que dichos dulces resultaron contaminados y los dulces que vendía el demandado eran fabricados en la repostería del señor Andrés Vázquez.

"13.—Que trabajaba en esa fecha en la repostería del demandado el Sr. Hosmel Galán, maestro de repostería y panadería, con gran experiencia en estos menesteres. Se encargaba de la supervisión de los dulces fabricados en la repostería y además de él no había ninguna otra persona con experiencia suficiente para poder determinar cuáles dulces podían ponerse a la venta y cuáles no.

"14.—El Sr. Hosmel Galán supervisaba los dulces fabricados en la repostería pero no así los comprados a otras reposterías.

"15.—Nunca se le consultó en cuanto a la calidad cuando se compraba. Era la esposa del demandado la que se encargaba de determinar cuándo debían retirarse los dulces de la venta y cuándo y cómo podían ponerse los dulces a la venta.

"16.—Según su testimonio los palitos de Jacob no deben venderse después de 12 horas de haberse fabricado. Su período de duración fluctúa entre 8 y 12 horas.

"17.—Según el testimonio del Dr. Federico Hernández Morales y de la técnica de laboratorio Sra. Lolita Lugo de Daniels, la crema que contienen los palitos de Jacob ofrece un magnífico cultivo para el tipo de bacterias con que estos dulces estaban contaminados siendo necesario tomar providencias especiales y extraordinarias para evitar tales contaminaciones.

"18.—La enterotoxina empieza a desarrollarse 8 horas después de la contaminación con el estafilococo, lo cual quiere decir que una de las posibilidades es de que cualquier dulce que con-

tenga las cremas, gran ambiente para el cultivo de dicha bacteria, debe consumirse dentro de las primeras ocho horas después de haberse fabricado. (Véase testimonio del Dr. Hernández Morales.)

"19.—Don Ángel Ortiz compró a las seis y media de la mañana del día 18 de mayo un palito de Jacob en el negocio de don Juan Hernández a quién el Sr. Andrés Vázquez también le suplía dulce. Este señor también se intoxicó al comer dicho dulce. aunque comprado en un establecimiento distinto al del demandado es de los mismos que el demandado vendía. Si a las seis y media de la mañana los dulces estaban intoxicados evidentemente a esa hora ya estaban hechos. Si a las seis y media cuando Ángel Ortiz ingirió el dulce ya estaba contaminado, la virulencia de una intoxicación producida por los mismos dulces o análogos once horas después tiene que ser necesariamente mayor.

"20.—Como la enterotoxina que es la que produce la intoxicación se desarrolla ocho horas después de la contaminación, evidentemente a las seis y media de la mañana ya hacía ocho horas que los dulces estaban contaminados. Al demandado le hubiera sido fácil enterarse del proceso de fabricación así como la hora en que se fabrican los dulces que se vendían toda vez que de acuerdo con el testimonio del Sr. Andrés Vázquez, la repostería de éste colinda por la parte de atrás con el negocio del demandado."

█ El apelante señala en su alegato la comisión de cinco errores. En el primero de ellos alega que el demandante no probó bajo el derecho ni la evidencia una acción de daños y perjuicios en su contra. Además de atacar infundadamente el valor probatorio de la evidencia presentada por el demandante, arguye que no se probó que dicho demandante se intoxicara con los palitos de Jacob que compró al demandado. Descansa en que el doctor no examinó ni los vómitos ni las diarreas del demandante para determinar la causa de los mismos. Esta cuestión fué ya resuelta en su contra en los casos de *Castro* v. *Payco, Inc.*, 75 D.P.R. 63 y *Armstrong* v. *Martínez*, resuelto *per curiam* en 19 de abril de 1955. Tanto en aquellos casos como en el presente había amplia prueba adicional en la cual podía descansar el tribunal sentenciador

para resolver que la intoxicación sufrida por el demandante fué causada por los palitos de Jacob comprados en la repostería del demandado.

■■ En los errores segundo y cuarto sostiene el apelante que un vendedor no es responsable por la venta de productos no manufacturados por él y que por tanto, en este caso es inaplicable la doctrina sobre la "garantía implícita". También resolvimos esta cuestión en su contra en *Armstrong* v. *Martínez,* supra.

■ En el tercer señalamiento se discute la aplicabilidad de la Ley núm. 72 de 1940 (pág. 493) en acciones de daños y perjuicios como la ejercitada por el demandante-apelado. En *Castro* v. *Payco, Inc.,* supra, consideramos dicha ley. Es innecesario repetir lo que allí dijimos. La defensa del apelante no puede descansar en su desconocimiento de las condiciones en que se encontraban los dulces que vendió al apelado. El error no fué cometido.

■ Tampoco se cometió el quinto y último error. En el récord hay base para sostener la conclusión del tribunal sentenciador al efecto de que el demandado-apelante fué temerario, por lo que procedía la imposición de honorarios de abogado. La suma concedida en este concepto no es irrazonable. Véase *Castro* v. *Payco, Inc.,* supra.

*La sentencia apelada será confirmada.*