JUANA PADILLA, ETC., demandantes y recurridos, *v.* MUNICIPIO DE MANATÍ y CARLOS GEORGI OLIVER, demandados y recurrente el primero.

*Número:* 374      *Resuelto:* 5 de abril de 1963

---

*J. B. Fernández Badillo, Procurador General, Nilita Vientós Gastón, Procurador General Auxiliar, y Juan A. Faría, Procurador General Auxiliar,* abogados del Municipio de Manatí; *Angel Manuel Ciordia,* abogado de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

PER CURIAM: ▮ En *Bonet* v. *Municipio de Barceloneta,* 87 D.P.R. 81 (1963), expusimos la responsabilidad de un empresario o promotor de un espectáculo en que se quemen fuegos artificiales, en las siguientes palabras:

"La obligación de un empresario o promotor de un espectáculo como el envuelto en el presente caso se limita 1) a proporcionar un sitio seguro a los espectadores para presenciar el espectáculo; y 2) a seleccionar una persona diestra para ello. *Sebeck* v. *Plattdeutsche Volkfest Verein,* 124 Fed. 11 (2d Cir. 1903), 46 Atl. 631 (1900) ; *Blue Grass Fair Ass'n* v. *Bunnell,* 267 S.W. 237 (Ky. 1924); *Reisman* v. *Public Service Corporation,* 81 Atl. 838 (1911) ; *Devo* v. *Kingston Consol. R. Co.,* 88 N.Y.S. 487 (1904). En *Sebeck* se indicó que si la explosión prematura se debe a un defecto de construcción que no puede determinarse por una simple inspección o a la forma en que se manipulan los fuegos artificiales, el empresario no es responsable, pues su obligación se limita a hacer una selección adecuada de la persona que ha de suministrarlos y quemarlos; *Devo* se manifiesta en igual sentido; y en *Blue Grass,* aunque se habla de deber indelegable, ello se refiere al de proporcionar un sitio seguro a los asistentes, y se llega tan lejos como afirmar que la selección adecuada del operador de los fuegos releva de responsabilidad aunque se trate de una obra inherentemente peligrosa."

Según revela la transcripción de la prueba ofrecida en el presente caso el Municipio de Manatí contrató los servicios de un pirotécnico de cerca de 20 años de experiencia para la quema de fuegos artificiales durante las festividades de las fiestas patronales que se celebraron en dicho municipio a principios de 1959; que dicho pirotécnico había desempeñado igual labor durante los últimos tres años; que el lugar seleccionado para la quema de los fuegos—el atrio de la iglesia parroquial—fue el que desde muchos años se utilizaba para ese fin; que el atrio tiene cierta elevación, está separado de la vía pública por una verja de alrededor de 4½ pies de altura, y que los concurrentes están a una distancia entre 40 y 60 pies del sitio en que se queman los distintos fuegos.

El tribunal de instancia determinó además que la caída de la "rueda voladora" que produjo quemaduras leves y graves al menor demandante se debió a un defecto en su construcción.

■ Aplicando la norma expuesta en *Bonet* no puede imponerse responsabilidad alguna al municipio demandado pues utilizó los servicios de una persona diestra y de reconocida experiencia para llevar a cabo el espectáculo; y, dentro de las circunstancias, proporcionó un sitio razonablemente seguro a los espectadores para evitar que se les infligiera el daño previsible y que podía anticiparse suponiendo la ausencia de defectos en la manufactura de los fuegos artificiales. Por otro lado, si el accidente se produjo debido al desprendimiento irregular del artefacto que causó el daño por su construcción defectuosa, tampoco podría exigírsele reparación a menos que se determinara que el codemandado Georgi no era un contratista independiente, sino un empleado o agente.

■ El juez recurrido concluyó que el pirotécnico Georgi era un empleado del municipio demandado. Esta determinación no tiene base en la prueba presentada, que fue al efecto de que el presidente de las festividades contrató con el codemandado Georgi la manufactura y quema de los fuegos artificiales mediante el pago de la suma de $1,200; que Georgi y un ayudante puesto por él, de nombre Cruz Pérez, eran quienes intervenían en la operación de la quema de los fuegos; "los superviso, los hago y los quemo," manifestó el pirotécnico. Los hechos en que pretende fundarse la relación de patrono y empleado no tienen el alcance y significado que se le atribuye por el juez recurrido, a saber, que los fuegos se almacenaron en el edificio de la alcaldía y diariamente se le entregaba a Georgi la cantidad que correspondía quemar; que el municipio suministró unos pedazos de madera y cuartones y una coa y una pala para cavar los hoyos en

que se colocarían los parapetos de algunos de los fuegos; que había un empleado municipal que le supervisaba para asegurarse de que se quemaba el número de cohetes, bombas y ruedas según se había acordado, y que el codemandado recibía indicaciones de otro empleado municipal para comenzar la operación de quema de los fuegos, que coincidía con la terminación de los oficios religiosos y la salida de los feligreses. Un ligero examen demuestra que el municipio no retenía el control en la *ejecución* del trabajo en cuanto a la forma y medios para lograr el resultado deseado. Siendo ello así, la relación existente no era la de patrono y empleado, sino la de principal y contratista independiente. *Mariani* v. *Christy,* 73 D.P.R. 782, 796 (1952); cf. *Landrón* v. *Junta de Relaciones del Trabajo,* 87 D.P.R. 94 (1963); *Sierra Berdecía* v. *Pedro A. Pizá, Inc.,* 86 D.P.R. 447 (1962); *Atiles, Admor.* v. *Comisión Industrial,* 68 D.P.R. 115 (1948); *Atiles, Admor.* v. *Comisión Industrial,* 63 D.P.R. 597 (1944); *Montaner* v. *Comisión Industrial,* 59 D.P.R. 285 (1941); *Romero* v. *Comisión Industrial,* 57 D.P.R. 354 (1940).

■ Finalmente, en *Bonet* v. *Municipio de Barceloneta,* supra, ante una situación similar, resolvimos que no se trataba de una actividad inherentemente peligrosa por la cual pudiera exigirse responsabilidad al principal por los actos del contratista independiente.[1]

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de Arecibo, en 19 de julio de 1960, y se desestimará la demanda en cuanto al municipio recurrente.*

---

[1] Sería aconsejable que los municipios exigieran de estos contratistas independientes la adquisición de una póliza de seguros para responder a la ciudadanía de daños ocasionados en situaciones como las del presente caso.