JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* MANHATTAN TAXI CABS CORP., ET AL., demandados.

*Número:* JRT-64-14      *Resuelto:* 27 de mayo de 1965

*J. B. Fernández Badillo, Procurador General, Luis M. Rivera Pérez, Marta Ramírez de Vera* y *Celia Canales de González,* abogados de la peticionaria; *Miguel E. Herrero Frank,* abogado de los demandados.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 9 de enero de 1964 la Unión de Operadores de Taxi presentó ante la Junta de Relaciones del Trabajo de Puerto Rico una petición para investigación y certificación de representante para la negociación colectiva con las empresas Manhattan Taxi Cabs Corp., Tomás Ortiz Taxi Service y Clara de Ortiz Taxi. Específicamente se alegó la existencia de una controversia relativa a la representación de los empleados utilizados por dichas empresas en una unidad apropiada para la negociación colectiva. Art. 5 de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 66, y 29 R.&R.P.R. sec. 64–15. En 30 de enero el Presidente de la Junta emitió un aviso de audiencia dirigido a las partes, 29 R.&R.P.R. sec. 64–19, señalando para ello el día 7 de febrero.

En 6 de febrero, el patrono—se acepta que las tres empresas constiuyen un negocio común—y la unión peticionaria suscribieron un acuerdo para elección por consentimiento que hizo innecesaria la celebración de la audiencia. Del mencionado acuerdo copiamos a continuación los párrafos pertinentes:

"1. *Voto Secreto.*—Consentir que se celebre una elección por voto secreto bajo la supervisión del Jefe Examinador de la Junta de Relaciones del Trabajo de Puerto Rico, en adelante llamado Jefe Examinador, o su representante, entre los empleados comprendidos en la unidad apropiada que abajo se define, a la hora y sitio más adelante indicados, para determinar si tales empleados del Patrono desean estar representados por cualquiera de las organizaciones obreras que suscriben este Acuerdo o por ninguna. La elección se llevará a cabo de acuerdo con la Ley de Relaciones del Trabajo de Puerto Rico, el Reglamento vigente de la Junta de Relaciones del Trabajo de Puerto Rico y a tono con sus normas y procedimientos; *disponiéndose,* que la determinación del Jefe Examinador sobre cualquier cuestión que surja bajo cualquiera de las disposiciones de este Acuerdo será final y obligatoria para las partes, incluyendo aquellas cuestiones relacionadas con la elegibilidad de los votantes, las recusaciones a los mismos, las objeciones a la conducta que prevaleció durante la elección y cualesquiera otras cuestiones que se susciten bajo

el párrafo 9 de este Acuerdo, que puedan ser levantadas por cualquiera de las partes en esta elección.

"2. *La Unidad Apropiada.*—La unidad apropiada para la negociación de convenios colectivos consiste de los siguientes empleados del Patrono. Todos los conductores de taxímetros utilizados por Manhattan Taxi Cabs, Corp., Tomás Ortiz Taxi Service y Clara de Ortiz Taxi; excluídos: ejecutivos, administradores, supervisores, personal de oficina, mecánicos, ayudantes de mecánicos, hojalateros y cualesquiera otras personas con autoridad para emplear, despedir, ascender, disciplinar, o de otra manera variar el status de los empleados o hacer recomendaciones al efecto.

"3. *Votantes Elegibles.*—Los votantes elegibles serán aquellos empleados incluídos en la unidad anteriormente descrita cuyos nombres aparecen en la nómina de pago del Patrono para el período comprendido entre el 27 de enero y el 2 de febrero de 1964, pero excluyendo cualquier empleado cuyo nombre aparezca en dicha nómina y que desde entonces haya renunciado o haya sido despedido por justa causa y que no haya sido reempleado antes de la fecha de la elección. A requerimiento del Jefe Examinador, el Patrono suministrará una lista completa en orden alfabético de todos los empleados incluídos en la nómina escogida.

.    .    .    .    .    .    . .    .

"9. *Objeciones y Recusaciones.*—Objeciones a la conducta o el resultado de la elección pueden ser radicadas ante el Jefe Examinador dentro de los cinco días inmediatamente siguientes a la elección, con constancia de que copias de dichas objeciones han sido suministradas a todas las partes. El Jefe Examinador investigará las objeciones y emitirá un informe sobre los resultados de su investigación, que será final y obligatorio para las partes. Si las objeciones son sostenidas, el Jefe Examinador puede incluir en su informe una orden invalidando los resultados de la elección. En ese caso estará autorizado a llevar a cabo una nueva elección bajo las condiciones y disposiciones de este Acuerdo en la fecha, hora y sitio que él creyere más convenientes. Si las recusaciones afectasen el resultado de la elección, el Jefe Examinador investigará y rendirá un informe sobre las mismas, que será final y obligatorio para las partes.

"10. *Certificación de Representante.*—El Jefe Examinador emitirá, una vez celebrada la elección, cuyo resultado haya sido

concluyente, una 'Certificación de Representante' dando a conocer el nombre de la organización obrera designada y seleccionada en la elección como representante exclusiva de todos los empleados comprendidos en la unidad apropiada anteriormente descrita, para los fines de contratación colectiva con respecto a salarios, horas de trabajo y otras condiciones de empleo. En caso de que ninguna de las organizaciones obreras participantes haya obtenido la mayoría de los votos válidos depositados, el Jefe Examinador expedirá un 'Certificado de Resultado de Elección' haciendo constar este hecho."

Se preparó la lista de votantes elegibles y llevóse a cabo la elección correspondiente. Aparece un cotejo de votos certificado por representantes del patrono y la unión del cual surge que participaron 27 de 29 votantes elegibles: 20 votos a favor de la unión peticionaria, 3 en contra y 4 votos recusados. En 18 de febrero se expidió la certificación correspondiente.

La unión requirió al patrono para que discutiera un proyecto de convenio colectivo, a lo cual éste negóse, dando con ello margen a la formulación de una querella imputándole haber incidido en conducta que constituye prácticas ilícitas de trabajo dentro del significado de los incisos (a) y (d) del Art. 8 de la Ley, 29 L.P.R.A. sec. 69. Referido el asunto a un oficial examinador, éste determinó que efectivamente la parte demandada rehusó negociar colectivamente con la organización certificada. La Junta aprobó las actuaciones de dicho funcionario y emitió la correspondiente orden de cesar y desistir.

■ El patrono reitera ahora ante este Tribunal la posición que asumió desde sus comienzos en los procedimientos de práctica ilícita ante la Junta: la ausencia de una relación obrero-patronal, por tratarse, a su juicio, de contratistas independientes—"arrendatarios" de los taxímetros—y no de empleados de la empresa. Está impedido de levantar esa cuestión por los términos del acuerdo para elección por consentimiento.

*N.L.R.B.* v. *United Dairies*, 337 F.2d 283 (10th Cir. 1964), envolvía una situación de hechos similar. Solicitada la certificación de una unión como representante de los conductores empleados por el patrono para la entrega y distribución a domicilio de leche y productos lácteos, la unión peticionaria y el patrono suscribieron un acuerdo de elección por consentimiento mediante el cual dispensaron la celebración de audiencia. En el acuerdo se estipuló que la unidad apropiada comprendería "Todos los conductores de camiones, incluyendo los conductores de rutas a comisión, los conductores de emergencia, y/o los supervisores de rutas, los *distribuidores, . . .*" La unión triunfó en las elecciones y fue debidamente certificada. Durante las negociaciones que siguieron, United se negó a negociar sobre el salario y condiciones de trabajo de los distribuidores a domicilio alegando que éstos eran contratistas independientes. Se iniciaron procedimientos por la práctica ilícita de negativa a negociar. En la audiencia celebrada el oficial examinador permitió que se dilucidara la condición de los distribuidores a domicilio. Concluyó que eran empleados. La Junta se negó a determinar el *status* de los distribuidores por entender que United estaba impedida para ello en vista de que había suscrito el acuerdo de elección por consentimiento incluyéndolos como parte de la unidad apropiada y además no había impugnado el derecho de éstos a participar en la elección mediante la recusación de sus votos. Al sostener la posición de la Junta, dijo la Corte de Apelaciones del Décimo Circuito, a la pág. 286:

"Convenimos en que no es necesario determinar a la luz de la evidencia presentada en el caso de práctica ilícita el status de los distribuidores, esto es, si son empleados o contratistas independientes. La sec. 9(c)(4) de la Ley, 29 U.S.C.A. § 159(c)(4), expresamente dispone que la audiencia puede ser renunciada en un procedimiento de representación mediante una estipulación consintiendo una elección conforme a los reglamentos y decisiones de la Junta. Este acuerdo para celebrar una elección por consentimiento es un contrato entre las partes y, a menos

que sea contrario a la ley, es obligatorio para éstas, conforme a sus términos. [Citas] Las cortes han resuelto uniformemente que cuando se ha suscrito un acuerdo de esta naturaleza por el patrono y la unión y ha sido aprobado por la Junta, y cuando tal acuerdo provee que las determinaciones del Director Regional serán finales y obligatorias, esta determinación es concluyente, y no puede ser impugnada a menos que el Director Regional haya actuado arbitraria o caprichosamente o ignorado la política de la Junta o las exigencias de la Ley [Citas].

. . . . . . . .

No puede haber duda que las partes aceptaron que los distribuidores en cuestión estaban comprendidos en la unidad apropiada, y que, como cuestión de hecho, participaron en la elección. El Director Regional certificó la unión como representante autorizada de la unidad. No se alega que esta determinación sea arbitraria o caprichosa o incompatible con la política de la Junta o las exigencias de la ley. Es por tanto final . . . ."

Véanse además, *Diversey Corporation* v. *N.L.R.B.*, 325 F.2d 489 (7th Cir. 1964); *Manning, Maxwell & Moore Incorporated* v. *N.L.R.B.*, 324 F.2d 857 (5th Cir. 1964); *N.L.R.B.* v. *Parkhurst Manufacturing Co.*, 317 F.2d 513 (8th Cir. 1963); *N.L.R.B.* v. *Sumner Sand & Gravel Co.*, 293 F.2d 754 (9th Cir. 1961); *National Labor Relations Board* v. *J. W. Rex Company*, 243 F.2d 356 (3rd Cir. 1957); Anotación, *Construction and effect of consent election agreements under federal labor relations acts*, 36 A.L.R.2d 1177 (1954).

En *National Labor Relations Board* v. *Capitol G. Lines*, 140 F.2d 754 (6th Cir. 1944), resuelto bajo las disposiciones de la Ley Wagner, el tribunal citó con aprobación de la decisión de la Junta que expresaba que, en presencia de un acuerdo entre las partes sobre el carácter final de las determinaciones del Director Regional, éstas no se dejarán sin efecto salvo en los casos en que hubiese actuado arbitraria o caprichosamente, porque "[s]ostener lo contrario permitiría a un patrono ignorar deliberadamente estipulaciones convenidas en un acuerdo obligatorio; abriría las puertas a sub-

terfugios para obstaculizar y demorar las controversias sobre representación; y tendería a derrotar, en lugar de lograr promover, los fines de la Ley."

■ De la relación de hechos que antecede aparece que el patrono demandado consintió la celebración de la elección, participó en la misma y certificó su resultado, y que no es hasta que se le requiere para negociar que por primera vez levanta la cuestión que se dirige a impugnar la integración de la unidad apropiada que previamente había aceptado.(1) La existencia de una cláusula sobre el carácter definitivo de las determinaciones del Jefe Examinador—párr. 9 del acuerdo por consentimiento—le impide cuestionar ahora todo lo relacionado con la unidad apropiada. Ni siquiera se insinúa que dicho examinador actuó en forma arbitraria, caprichosa o contraria a la política de la Junta o de la Ley de Relaciones del Trabajo.

*Se pondrá en vigor la orden de la Junta de Relaciones del Trabajo de 30 de septiembre de 1964.*

---

(1) Significativo por demás es que el patrono sometió un proyecto de convenio a la Unión, (Exh. J-5) en el cual aunque se denomina a la Unión como "los arrendadores [*sic*]", se le reconoce como "los representantes legítimos de los chaufferes o [*sic*] operadores de taxis de esta compañía". (T.E. pág. 48.)