ALFREDO NAZARIO, ETC., ET AL., querellantes y recurrentes, *v.* RAIMUNDO VÉLEZ y/o PUERTO NUEVO TAXICABS y OTROS, querellados y recurridos; COMISIÓN DE SERVICIO PÚBLICO, interventora.

*Número:* O-68-195    *Resuelto:* 23 de junio de 1969

460

Manuel Janer Mendía y Mario Morales Reyes, abogados de los recurrentes; Rafael A. Rivera Cruz, Procurador General, J. F. Rodríguez Rivera, Subprocurador General, y Peter Ortiz, Subprocurador General Interino, abogados de la interventora; Carmelo Ávila Medina, Roberto Ávila Rivera, Heriberto Torres Vázquez, Balbino A. Colón Martínez y Rafael Rodríguez Llanos, abogados de los recurridos.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

Desde 1962, en *Sierra Berdecía* v. *Pedro A. Pizá, Inc.*, 86 D.P.R. 447 (1962), anticipamos que el concepto tradicional del derecho consuetudinario sobre los rasgos característicos de un contratista independiente no es de aplicación estricta en la interpretación de estatutos reguladores de salarios mínimos y condiciones de trabajo, de naturaleza eminentemente reparadora. El mejoramiento de condiciones de trabajo para lograr normas mínimas de bienestar general de los trabajadores y empleados es un valor social más fundamental que la pura distinción enmarcada dentro de los estrictos moldes del contratista independiente, concepto que se desarrolló en el área de la responsabilidad extracontractual y que originalmente respondió a la necesidad de estimular el desarrollo industrial.[1] De ahí que consistentemente

[1] Para una excelente exposición sobre el desarrollo de este concepto remitimos a la opinión disidente emitida en *Stover Bedding Co.* v. *Industrial Commission*, 107 P.2d 1027, 1029–1045 (Utah, 1940). Véase además, 39 Yale L.J. 861 (1930).

En Puerto Rico, en el campo de la responsabilidad extracontractual, hemos incorporado la doctrina del contratista independiente, con su clásico ingrediente del "control" como factor determinante para su aplicación. *Padilla* v. *Municipio de Manatí*, 88 D.P.R. 18, 21 (1963); *Bonet* v. *Muni-*

hayamos rechazado interpretaciones restrictivas que conduzcan a excluir de la protección que esta legislación brinda. *Campos de Encarnación* v. *Sepúlveda*, 94 D.P.R. 74 (1967); *Srio. del Trab.* v. *Cement. Cat. Porta Coeli*, 92 D.P.R. 527 (1965); *Sierra Núñez* v. *Const. Equipment Corp.*, 90 D.P.R. 141 (1964).

Una interpretación restrictiva—en gran parte debida a la forma insatisfactoria en que se estipularon los hechos—explica la determinación negativa, tanto del Tribunal Superior como del Tribunal de Distrito, sobre el derecho a vacaciones de ciertos conductores de taxímetros.([2]) En sus contestaciones la parte querellada negó la existencia de relación obrero-patronal entre las partes y sostuvo, por vía de defensa afirmativa, que el vínculo de las partes era de naturaleza arrendaticia. Examinemos los hechos.

La parte querellada es concesionaria de una franquicia otorgada por la Comisión de Servicio Público para operar varios taxis. Mediante acuerdo verbal, y previa la autorización de dicho organismo, cedió la operación de una de las unidades al querellante, quien le pagaba diariamente a la querellada determinada suma fija, que se aumentaba en los

---

*cipio de Barceloneta*, 87 D.P.R. 81 (1963); *Mariani* v. *Christy*, 73 D.P.R. 782 (1952).

En áreas del derecho laboral hemos tenido ocasión de considerar su aplicación: en compensación sobre accidentes del trabajo, *Bustelo* v. *Comisión Industrial*, 85 D.P.R. 582, 591 (1962); *Atiles, Admor.* v. *Comisión Industrial*, 68 D.P.R. 115 (1948); *Atiles, Admor.* v. *Comisión Industrial*, 63 D.P.R. 597, 601 (1944); *Tomás* v. *Comisión Industrial*, 59 D.P.R. 860, 865 (1942); *Montaner, Admor.* v. *Comisión Industrial*, 59 D.P.R. 285, 288 *et seq.* (1941); *Romero* v. *Comisión Industrial*, 57 D.P.R. 354 (1940); *Montaner, Admor.* v. *Comisión Industrial*, 57 D.P.R. 272, 276 (1940); en relaciones obrero-patronales, *J.R.T.* v. *Manhattan Taxi Cabs Corp.*, 92 D.P.R. 436 (1965); *Landrón* v. *J.R.T.*, 87 D.P.R. 94 (1963); en reclamación por vacaciones, *Sierra Berdecía* v. *Pedro A. Pizá, Inc.*, 86 D.P.R. 447 (1962).

([2]) La reclamación se funda en las disposiciones del Art. V B del Decreto Mandatorio Núm. 12, aplicable a la industria de transportación, 29 R.&R.P.R. sec. 245n–195, conforme a lo prescrito en la Sec. 40(b) de la Ley de Salario Mínimo, 29 L.P.R.A. sec. 246k.

días viernes, sábados y domingos. Los operadores de taxi no recibían pago directo alguno de la querellada. Los gastos por consumo de gasolina se satisfacían por el conductor; las reparaciones eran de cargo de la empresa. Hasta aquí los hechos estipulados.

Pertinencia tiene también la actuación de la Comisión de Servicio Público que afecta la relación existente entre las partes. Está contenida en sus acuerdos de 5 de febrero de 1957 y 20 de mayo de 1958. En el primero, luego de indicar que se le ha planteado el problema sobre la procedencia del "arrendamiento" de los vehículos por las concesionarias a sus chóferes a la luz de la Ley de Servicio Público, se resuelve que tal sistema es conveniente para el servicio público sujeto a la supervisión por la Comisión de las concesionarias y los "arrendatarios", y al efecto se prescriben condiciones. (³) En el segundo, con la intervención de la División

---

(³) Las condiciones que tienen pertinencia sobre el asunto discutido son las siguientes:

"1. Deberá radicarse por las concesionarias y por los arrendatarios un contrato de arrendamiento disponiendo el término de duración de dicho contrato y las condiciones del mismo, entendiéndose, que queda incorporado en todo contrato las condiciones que se establezcan por medio de este ACUERDO. A los efectos de las licencias de los vehículos y para cualesquiera cosa que la Comisión requiera la presencia del vehículo ante la misma, las concesionarias se harán responsables directamente de cumplir con dicho ACUERDO.

"2. .      .      .      .      .      .      .      .

"3. .      .      .      .      .      .      .      .

"4. Las empresas concesionarias seguirán siendo directamente responsables ante esta Comisión por el cumplimiento de las órdenes y leyes que le afecten y las reglamentaciones que para este tipo de servicio disponga la Comisión de Servicio Público.

"5. La forma de operación de dichos vehículos será idéntica o igual como si no existiera tal arrendamiento, esto es, existirán entre los arrendatarios y las concesionarias las mismas relaciones que existían cuando los arrendatarios actuaban como empleados de las concesionarias. Los arrendatarios y las concesionarias quedarán obligados a prestar el servicio en tal forma que impida la desorganización del mismo, las prácticas ilegales de competencia, el exceso de velocidad y el incumplimiento de las Leyes y Reglamentos de Tránsito de Puerto Rico. Cada contrato deberá ser previamente aprobado por la Comisión antes de que el mismo entre en vigor.

"6. Toda póliza de seguro que cubre cada uno de estos vehículos

Legal del Departamento del Trabajo, se ratifica el acuerdo anterior y "se reafirma [la] posición . . . en el sentido de que no puede entenderse bajo concepto alguno de crear en el operador del taxi un patrono particular, sino que existen las relaciones obrero-patronales entre el dueño del taxi . . . a cumplir con todas las leyes relativas al trabajo y a las relaciones obrero-patronales." (⁴)

■ Conviene indicar previamente que la caracterización o denominación que hagan las partes respecto a la naturaleza de sus relaciones no es decisiva, *Landrón* v. *J.R.T.*, 87 D.P.R. 94, 101 (1963). Considerando los escasos elementos de prueba que se ofrecieron en el presente caso no creemos que pueda afirmarse que en efecto existe entre

---

deberá contener un endoso por virtud del cual la compañía aseguradora acepte cubrir los riesgos a que se ha obligado bajo el contrato de seguro, aun cuando el vehículo esté siendo operado por un arrendatario del mismo.

"7. En caso de accidente, no importa lo leve que éste sea, tanto las concesionarias como los arrendatarios estarán en la obligación de notificar inmediatamente a la Comisión, para que luego de practicada la correspondiente investigación se pueda determinar la responsabilidad de los arrendatarios o de los concesionarios por el accidente ocurrido.

"8. Será obligación de las concesionarias mantener a la Comisión informada en todo momento de los arrendatarios y sus vehículos así como de cualquier violación a las órdenes, reglas y leyes que gobiernan la operación de los taxis.

"9. Los arrendatarios vendrán obligados en bien del servicio público a estacionar sus vehículos en las mismas oficinas centrales de las concesionarias con vista a que acudan a las llamadas de los usuarios tal como se hacía cuando eran empleados de las compañías.

"10. No podrá ser arrendatario del vehículo quien no sea chófer con licencia de operador de taxi que esté vigente al momento del arrendamiento, y ningún arrendamiento podrá ser por un término mayor del tiempo que falta para el vencimiento de la licencia de operador de taxi del arrendatario.

"11. No podrá ningún contrato de arrendamiento emitirse, derogarse o rescindirse sin el consentimiento de la Comisión de Servicio Público.

(⁴) Para instrumentar esta disposición del acuerdo se requirió a los empresarios de taxímetros para que: (a) rindieran los informes correspondientes sobre el cumplimiento de las leyes laborales; (b) radicaran constancia sobre el pago del seguro de desempleo y la fecha de pago; (c) endosaran las pólizas de responsabilidad pública para cubrir la operación de los vehículos por los "arrendatarios".

las partes un vínculo de arrendador y arrendatario, sino que más bien se trata de un contrato atípico, que elude una clasificación definida. La insistencia de ambos litigantes en referirse a "arrendamiento" de taxis tal vez impresionó demasiado a los tribunales de instancia.

■ En *Landrón* v. *J.R.T.*, supra, a la pág. 101, señalamos una serie de factores que se han considerado para resolver si en relaciones parecidas se trata de un contratista independiente o de un empleado: (a) el grado de control en la ejecución de la labor, (b) la forma de compensación, (c) la facultad de emplear y el derecho a despedir, (d) la oportunidad de beneficio y el riesgo de pérdida, (e) la propiedad del equipo y dependencia en las facilidades suministradas por el principal, (f) la retención de contribuciones. Abundan los pronunciamientos en uno y en otro sentido, casi siempre al margen de una determinación sobre la obligación de retención contributiva. Véanse, anotaciones, *Taxicab driver as employee of owner of cab, or independent contractor, within social security and unemployment insurance statutes*, 10 A.L.R.2d 369, y *What amounts to . . . lessor-lessee relationship, as distinguished from employment or service relation, within social security or unemployment compensation acts*, 164 A.L.R. 1411, 1419 y 152 A.L.R. 520, 522. Como ocurre con tanta frecuencia no hay una regla absoluta y todo depende de la importancia que se atribuya a cada uno de los factores. Así, se ha sostenido que la relación es de patrono y empleado en *United States* v. *Fleming*, 293 F.2d 953 (5th Cir. 1961); *Jones* v. *Goodson*, 121 F.2d 176 (10th Cir. 1941); *Yellow Cab Corporation* v. *United States*, 210 F.Supp. 64 (1962); *Michigan Cab Co.* v. *Kavanagh*, 82 F.Supp. 486 (1941); *Hannigan* v. *Goldfarb*, 147 A.2d 56 (N.J. 1958); *Lassen* v. *Stamford Transit Co.*, 128 Atl. 117 (Conn. 1925); *Gladstone Cab Company* v. *Donnelly*, 197 N.E.2d 3 (Ill. 1964); *Young* v. *Indiana Employment Security Board*, 187 N.E.2d 489 (Ind. 1963); *Kaus* v. *Un-*

*employment Compensation Commission*, 299 N.W. 415 (Iowa 1941); *Read* v. *Warkentin*, 341 P.2d 980 (Kan. 1959); *Salt Lake Transportation Co.* v. *Board of Review*, 296 P.2d 983 (Utah 1956); *Appeal of Farwest Taxi Service*, 114 P.2d 164 (Wash. 1941); *Meridian Taxi Cab Co.* v. *Ward*, 186 So. 636 (Miss. 1939); *Radley* v. *Commonwealth*, 181 S.W.2d 417 (Ky. 1944). En sentido contrario resolvióse en *Economy Cab Co. of Jacksonville* v. *Fahs*, 174 F.2d 321 (5th Cir. 1949), *cert.* den. 338 U.S. 818; *New Deal Cab Co.* v. *Fahs*, 174 F.2d 318 (5th Cir. 1949), *cert.* den. 338 U.S. 818; *Party Cab Co.* v. *United States of America*, 172 F.2d 87 (7th Cir. 1949), *cert.* den. 338 U.S. 818; *Woods* v. *Nicholas*, 163 F.2d 615 (10th Cir. 1947); *United States* v. *Davis*, 154 F.2d 314 (D.C. Cir. 1946); *Magruder* v. *Yellow Cab Co. of D.C.*, 141 F.2d 324 (4th Cir. 1944); *Co-Op Cab Co.* v. *Allen*, 82 F.Supp. 695 (1947); *Yellow Cab Co.* v. *Magruder*, 49 F.Supp. 605 (1943); *Davis Cabs, Inc.* v. *Leach*, 184 N.E.2d 444 (Ohio 1962); *Parks Cab Co.* v. *Annunzio*, 107 N.E.2d 853 (Ill. 1952).

■ No es necesario que examinemos estos factores en el presente caso. El criterio rector para la situación que consideramos debe aislarse de hechos que pueden variar dependiendo de la ingeniosidad de las partes al formular las condiciones del vínculo jurídico y más bien enmarcarse en la determinación de la posición en que se encuentra una en relación con la otra con especial énfasis en el grado de dependencia económica. Debe atenderse primordialmente a las realidades económicas en lugar de a las clasificaciones técnicas que puedan prevalecer en otras áreas del derecho, pero que no conducen a una justa solución cuando se trata de legislación reparadora. Es innegable que el operador del taxi se encuentra en una posición de subordinación manifiesta ante el concesionario de quien depende casi exclusivamente para el ejercicio de su labor, ya que es la empresa la tenedora de la franquicia. Mayor relieve tiene al consi-

466

derarse que por disposición administrativa se ha congelado la expedición de permisos para operar taxis. El operador está pues sujeto necesariamente a las exigencias y condiciones que pueda imponer el concesionario que no estén reñidas con los acuerdos de la Comisión de Servicio Público. La forma misma de compensación que requiere que el producto inicial del trabajo se entregue al concesionario a guisa de canon demuestra la posición de invalidez del operador. El contrato por día que se conviene coloca al operador a merced del empresario, quien puede darlo por terminado en el plazo más breve concebible. También tiene importancia el hecho de que se incluye a los operadores como obreros a los fines de otra legislación igualmente reparadora, como el seguro de desempleo. En suma, se trata de un grupo que merece y requiere la protección que para su salud y eficiencia representa el período de vacaciones provisto por el decreto.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 24 de junio de 1968, y se devolverá el caso para ulteriores procedimientos.*