# 97 DTA 174

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I - SAN JUAN
### PANEL I

MIRTHA HERNANDEZ, GALO BELTRAN Y LA SOCIEDAD
DE BIENES GANANCIALES COMPUESTA POR AMBOS
Apelados

v.

TRANS OCEANIC LIFE INSURANCE CO.
Apelante

Núm. KLAN-96-00850

San Juan, Puerto Rico, a 15 de agosto de 1997

Panel integrado por su Presidenta, Jueza Ramos Buonomo
y los Jueces González Román y Córdova Arone

Ramos Buonomo, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Trans Oceanic Life Insurance Co. (en adelante, *"TOLIC"*) nos solicita la revocación de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 7 de febrero de 1996 y notificada a las partes el 11 de marzo de 1996. Mediante dicha sentencia se declaró con lugar una demanda sobre despido injustificado y discriminatorio ██ presentada por los esposos Mirtha Hernández y Galo Beltrán, por sí y en representación de la sociedad legal de gananciales compuesta por ambos, contra TOLIC.

En su recurso, TOLIC señala los siguientes errores:

*"Primer error: Erró el Tribunal de Instancia [sic] al· concluir ·que entre la demandante y TOLIC existía una relación de patrono-empleado y no una de principal-contratista independiente.*

*Segundo error: Aun [sic] si la demandante era una empleada de TOLIC, erró el Tribunal de Instancia [sic] al concluir que ésta había sido discriminada por su edad.*

*Tercer error: Erró el Tribunal en la apreciación de la prueba que alegadamente demostró que la Sra. Mirtha Hernández era una empleada de Tolic y que esta última discriminó contra la primera por razón de edad.*

*Cuarto error: La compensación otorgada a la demandante fue excesiva a la luz de los hechos del presente caso."*

Mediante una resolución, le concedimos un término a la parte apelada para presentar su alegato. Posteriormente, a petición suya, le concedimos una prórroga. No obstante, no ha comparecido, por lo que procedemos a resolver. Por los fundamentos que se exponen más adelante, se confirma la sentencia apelada.

## I

Los hechos que encontró probados el Tribunal de Primera Instancia son los siguientes:

TOLIC es una compañía que se dedica a expedir pólizas de seguro mediante agentes y agentes generales.

La Sa. Mirtha Hernández (en adelante, *"Sa. Hernández"*) nació el 12 de octubre de 1929. Está casada con el Sr. Galo Beltrán.

La Sa. Hernández comenzó a trabajar como agente de seguros en la agencia general del Sr. Carlos Torres en 1985. Se dedicaba allí a mercadear y vender los productos de TOLIC. Continuó trabajando junto al Sr. Torres hasta el 19 de mayo de 1986, cuando se le nombró agente general mediante contrato suscrito por TOLIC. Pasó así a dirigir y supervisar a los agentes que previamente habían trabajado en la agencia general del Sr. Torres, quien había cesado como agente general de TOLIC.

El contrato de agencia general disponía en su cláusula novena que la Sa. Hernández sería contratista independiente y no empleada de TOLIC. A tales efectos, se dispuso expresamente que TOLIC no sería responsable de los gastos de la agencia, tales como renta de oficina, transportación, teléfono, franqueo, secretaria, patentes municipales, contribuciones sobre ingresos, etc. ■

La cláusula tercera disponía que la Sa. Hernández, como agente general, tenía la facultad de reclutar y recomendar a TOLIC, sujeto a la aprobación de esta última, la contratación de agentes para trabajar bajo la supervisión de la primera. Esa tercera cláusula establecía que la contratación de los agentes se haría directamente con la compañía y que la facultad del agente general era tan sólo de recomendar su contratación. También establecía que la compañía se reservaba el derecho de contratar cualquier agente recomendado por la Sa. Hernández o de, una vez contratado, terminar la relación por cualquier razón. ■

Luego de que el *contrato de agencia general fuese suscrito por las partes*, la Sa. Hernández arrendó un local en Río Piedras, lo equipó y preparó, y estableció allí sus oficinas. La apelada sufragó los gastos para el establecimiento y mantenimiento de la oficina.

Antes de suscribirse el referido contrato, la que entonces había sido la agencia general del Sr. Torres, se había quedado sin jefe, pues éste había cesado en esas funciones. El presidente de TOLIC, Lic. Rafael Claudio, se reunió con la Sa. Hernández y le preguntó si ella estaba interesada en hacerse cargo de la agencia, a lo cual ella asintió. El licenciado Claudio le sugirió a la apelada que se llevara el asunto a votación entre los agentes para así evitar la apariencia de que TOLIC estaba imponiendo un nuevo agente general. Así se hizo y la Sa. Hernández prevaleció.

Establecida la oficina, la Sa. Hernández reclutó y adiestró a los agentes nuevos, en preparación para el examen de agente que requiere el Comisionado de Seguros como condición para conceder licencia. La apelada supervisaba a los agentes y les orientaba sobre técnicas de mercadeo de los productos de TOLIC.

Para la fecha en que la apelada comenzó como agente general, sólo había dos agencias generales que mercadeaban los productos de cáncer de TOLIC: la de la apelada y la de los esposos Nicolás Touma y Carmen Taveras.

En abril de 1988 se efectuó una reorganización en TOLIC. El Sr. Touma paso a ocupar un cargo

que se creó entonces y que se denominó como Director de Agencias. El puesto estaba adscrito a las oficinas centrales de TOLIC.

La Sa. Taveras permaneció en la dirección de la agencia general que hasta entonces era de ambos.

El Sr. Touma comenzó entonces a intervenir en asuntos administrativos internos de la agencia de la Sa. Hernández y a dictar pautas en torno a la forma de mercadear productos, reclutar personal, adiestrar a los agentes y hasta despedirlos. Comenzó, además, a presidir las reuniones mensuales de agentes, lo que hasta entonces hacía la apelada.

A mediados de 1988, el Sr. Touma instruyó a la Sa. Hernández para que nombrara coordinadora de ventas a dos agentes que trabajaban en la agencia general de él. Este era un puesto de supervisión o intermedio entre la agente general y los agentes.

Cuando la Sa. Hernández recibió tales instrucciones, advirtió al Sr. Touma que, a pesar de que ambas agentes eran buenas productoras, en su opinión, no tenían las cualificaciones y cualidades para dedicarse a las labores de supervisión. No obstante, el Sr. Touma insistió en su nombramiento. La apelada acató la decisión.

Las agentes se desempeñaron como coordinadoras un tiempo, hasta que renunciaron a sus puestos mediante carta con fecha del 3 de noviembre de 1988. Cuando el Sr. Touma se enteró de las renuncias, insistió en entrevistarse con ellas a solas. Luego de dicha reunión, ambas comentaron a los demás agentes de la agencia general que se suscitarían cambios en la agencia.

El 14 de noviembre de 1988, los señores Touma y Roberto Tirado, vicepresidente de TOLIC, se reunieron con todos los agentes de la agencia general, a espaldas de la Sa. Hernández. Se discutieron en esa reunión ciertas quejas que tenían los agentes en cuanto a la operación de la agencia general. Varios días más tarde, Touma y Tirado se reunieron con la apelada para comunicarle las quejas que alegadamente tenían los agentes, con el propósito de buscar soluciones.

El 21 de noviembre de 1988 se efectuó otra reunión, a la que asistieron todos los agentes de la agencia general de la Sa. Hernández. Esta reunión, al igual que la primera, se llevó a cabo en las oficinas centrales de TOLIC, no en las oficinas de la apelada en Río Piedras. Antes de comenzar, ésta se reunió con el licenciado Claudio. El le sugirió que ella planteara en la reunión que aquellos agentes que no interesaran seguir con ella estaban libres de irse a otra agencia. Para esa fecha la compañía mantenía una política que no permitía a los agentes cambiar de agencia general.

La Sa. Hernández siguió el consejo del licenciado Claudio. Manifestó que ella haría una serie de ajustes en su agencia, pero que aquellos agentes que no quisieran continuar con ella estaban en libertad de irse a otra. Touma y Tirado repartieron entonces papeles en blanco a los agentes y les solicitaron que expresaran en votación secreta si deseaban continuar o no en la agencia de la apelada.

La idea de una votación secreta no había sido discutida previamente con la Sa. Hernández, ni ella tenía noción alguna de que se procedería de esa forma.

La votación resultó en que la mayoría de los agentes expresaran su deseo de no continuar en la agencia general de la Sa. Hernández y fueran trasladados, en su mayoría, a la agencia de la Sa. Taveras.

La apelada se quedó con sólo tres agentes, con quienes continuó la agencia general. En vista de que el volumen de ventas de los tres agentes no era suficiente para sufragar los gastos del local que la apelada había arrendado y habilitado en Río Piedras, ella decidió trasladar sus operaciones a su residencia, desde donde continuó operando la agencia hasta el 31 de diciembre de 1989, fecha en que se hizo efectiva la terminación del contrato de agencia general decretada por el Sr. Touma.

Desde que el Sr. Touma advino al puesto de Director de Agencias, en abril de 1988, el licenciado Claudio y el Sr. Tirado hicieron expresiones al efecto de que la Sa. Hernández debía asociarse con una persona más joven en vista de su edad. Ambos le sugirieron que se asociara con la agente Yasmín

Belén. Otros oficiales y empleados de TOLIC también hicieron comentarios y chistes relativos a la edad de la apelada y sobre lo que ella haría luego de su retiro. Para esa fecha tenía 60 años.

Luego de la terminación del contrato de agencia general, la Sa. Hernández sufrió una depresión para la cual fue necesario recibir tratamiento siquiátrico. Desde entonces y hasta la fecha de celebración de la vista en su fondo en este caso, la apelada se encontraba, según el testimonio pericial incontrovertido, incapacitada para trabajar.

Durante el tiempo en que la Sa. Hernández ha estado sin trabajar, su estado de ánimo ha variado. De una persona jovial, alegre y emprendedora, se ha convertido en una persona deprimida y fácilmente irritable, lo cual ha afectado las relaciones matrimoniales entre los apelados. El co-apelado, Galo Beltrán, ha sufrido angustias en vista del cambio en el ánimo y temperamento de su esposa.

## II

Discutiremos conjuntamente los tres primeros señalamientos de error. TOLIC alega que erró el tribunal *a quo* al concluir que entre la Sa. Hernández y TOLIC existía una relación de patrono-empleado y no una de principal-contratista independiente, y que aun si fuese la relación una de patrono-empleado, TOLIC no discriminó contra la Sa. Hernández. No tiene razón. Veamos.

Se ha reconocido que, usualmente, en este tipo de controversia se encuentran rasgos característicos comunes a ambas categorías, lo que hace difícil establecer con certeza una distinción tajante entre empleado y contratista independiente. *Fernández v. A.T.P.R.*, 104 D.P.R. 464, 465 (1975).

No obstante, en Fernández, *supra*, el Tribunal Supremo reiteró los siguientes factores para determinar si una relación es de empleado o de contratista independiente: a) naturaleza, extensión y grado de control por parte del principal; b) el grado de iniciativa o juicio que mantenga la persona; c) la propiedad del equipo; d) la facultad de emplear y el derecho a despedir; e) la forma de compensación; f) la oportunidad de beneficio y el riesgo de pérdida; y g) la retención de contribuciones. Tal determinación judicial, sin embargo, no depende de un factor específico, sino del conjunto de circunstancias presentes en la relación entre las partes. *Id.*, a la pág. 465.

Luego de examinar el cuadro fáctico de la controversia, el tribunal *a quo* concluyó que la naturaleza, extensión y grado de control que ejercía TOLIC en los asuntos internos de la agencia general de la Sa. Hernández explican una relación de patrono-empleado y no una de principal-contratista independiente. Destacó en su sentencia que los factores de mayor peso en su decisión fueron la facultad de emplear y el derecho de despedir que se reservó TOLIC sobre la apelada en el contrato que las unía, y el hecho de que TOLIC se reservaba el derecho de terminar el contrato en cualquier momento. Coincidimos.

La parte apelante sostiene que el tribunal *a quo* erró al no considerar el análisis de la realidad económica expuesto en *Landrón v. J.R.T.*, 87 D.P.R. 94 (1963). Discrepamos. Allí se dijo que para resolver si una persona es o no empleado dentro del alcance de la Ley de Relaciones del Trabajo de Puerto Rico es de importancia determinar la posición económica en que se encuentra en relación con la otra, de forma que los fines perseguidos por el estatuto requieran su protección. *Id.*, a la pág. 99. De la Exposición Narrativa de la Prueba se desprende que las ganancias que generaba la Sa. Hernández como *agente general* dependían del volumen de ventas de pólizas. No obstante, el aumento o disminución de este volumen depende, en gran medida, de la cantidad de agentes que tenga disponibles el agente general para lograr sus metas. Al TOLIC cancelarles el contrato a los últimos tres agentes que le quedaban a la Sa. Hernández, la dejó, en efecto, sin los medios para generar dicho volumen de ventas. Es decir, TOLIC, al reservarse la facultad de emplear, el derecho de despedir y el derecho de cancelar los contratos de los agentes en cualquier momento, podía controlar, como en efecto lo hizo, la realidad económica de la Sa. Hernández; o sea, sus oportunidades de beneficio o pérdida en la operación de su agencia general de seguros. Por otro lado, en la determinación de quién es un contratista independiente, un tribunal no debe descansar en cómo se designa el contrato firmado por las partes ni en factor aislado alguno, debiendo el tribunal examinar el conjunto de circunstancias en que se desenvuelve la relación. *Bengochea v. Ruiz Torres*, 103 D.P.R. 68, 71 (1974). Así que el hecho de que el contrato entre TOLIC y la Sa. Hernández especificara que la relación sería de contratista independiente no justifica que revoquemos la sentencia apelada. No habiendo regla

absoluta y fija en cuanto a la existencia de la relación de contratista independiente, cada caso debe resolverse de acuerdo con sus propios hechos. *Mariani v. Christy*, 73 D.P.R. 782, 797 (1952).

Si existe el poder de terminar el contrato en cualquier momento, poder que en el caso de autos se reservó TOLIC, █ la persona utilizada no sería un contratista independiente. *Id.*, a la pág. 799.

Además, la doctrina del contratista independiente, desarrollada en el área de la responsabilidad extracontractual y originalmente elaborada ante la necesidad de estimular el desarrollo industrial, no se aplica en esta jurisdicción cuando el así hacerlo excluiría a trabajadores y empleados del alcance de legislación reparadora █ que propende al mejoramiento de sus condiciones de trabajo con el objeto de lograr normas mínimas de bienestar general. *Nazario v. Vélez*, 97 D.P.R. 458, 460 (1969). El Tribunal Supremo ha rechazado, consistentemente, interpretaciones restrictivas que conduzcan a excluir de la protección que esta legislación brinda. *Id.*, a las págs. 460-461.

Los apelados buscaron amparo en varias leyes al presentar su reclamación. █ No obstante, el tribunal apelado especifica en su sentencia que resolvió la controversia bajo la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*, y el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

La Ley Núm. 100, *supra*, reconoce una causa de acción para toda persona que hubiese sido despedida o que de otro modo se viere negativamente afectada en su empleo por motivo de su edad, raza, color, religión, origen o condición social. *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42, 50 (1983). Su sección 148 establece una presunción de discrimen si el despido fue sin justa causa. Si el despido fue injustificado, se activa una presunción de que el mismo fue discriminatorio, correspondiéndole al patrono controvertir la presunción que dispone la ley. *Soto v. Caribe Hilton*, ___ D.P.R. ___ (1994), **94 J.T.S. 128**, a la pág. 312.

A los tribunales incumbe determinar, después de tomar en consideración los hechos y circunstancias especiales de cada caso, si el despido estuvo justificado o si fue caprichoso o injustificado. *Mercado v. Hull Dobbs Corp.*, 90 D.P.R. 864 (1964). Tal despido no tiene necesariamente que ser expreso. *Vélez de Reilova v. R. Palmer Bros., Inc.*, 94 D.P.R. 175 (1967).

TOLIC alega que no hubo despido, mas, como señaláramos antes, el tribunal determinó que el 31 de diciembre de 1989 TOLIC terminó el contrato de agencia general de la Sa. Hernández. Más aún, la sección 185e de la Ley Núm. 80, *supra*, incluye en su definición de despido la renuncia de empleo motivada por actuaciones del patrono dirigidas a inducir o forzar al empleado a renunciar, tales como imponerle o intentar imponerle condiciones de trabajo más onerosas. Era lógico anticipar que, con sólo tres agentes a su disposición, el volumen de ventas de pólizas bajaría. De hecho, los $72,529.85 que generó la Sa. Hernández en ingresos brutos por comisiones durante el año 1988 se redujeron a apenas $25,856.24 en 1989. Véase Apéndice del Escrito de Apelación, a la pág. 98. Por consiguiente, no tiene razón TOLIC al argumentar que la Sa. Hernández controlaba sus propios ingresos brutos, pues éstos dependían también de la cantidad de agentes que tenía a su disposición para generarlos.

En el caso de autos, TOLIC no logró probar ante el tribunal *a quo* que el despido de la Sa. Hernández estuviera justificado. De la Exposición Narrativa de la Prueba surge que el Lcdo. Rafael Claudio, presidente de TOLIC, testificó sobre el carácter amargado de la Sa. Hernández y el trato áspero que ella le brindaba a los agentes vendedores a quienes supervisaba; que esto motivó que se rebelaran y que no quisieran trabajar para TOLIC. Por otro lado, es de notar que el propio licenciado Claudio testificó que la Sa. Hernández obtuvo de TOLIC $72,529.85 en ingresos brutos por comisiones en el año 1988, la mayor cantidad generada desde que se le nombró agente general. Del testimonio del licenciado Claudio también se desprende que, a juzgar por las comisiones que recibió la Sa. Hernández, el volumen de ventas de pólizas aumentó significativamente desde 1985 hasta 1988, año en que comenzó la cadena de eventos que culminó con el éxodo masivo de agentes que dejó a la Sa. Hernández con sólo tres agentes para trabajar.

Por otra parte, el licenciado Claudio testificó que era usual en la industria que un mismo agente general representara a varias compañías en productos que no compitieran entre sí, y reconoció que la Sa. Hernández así lo había hecho entre 1985 y 1991. Véase Exposición Narrativa de la Prueba. En

vista de la política que tenía la compañía, según testificado por el presidente de TOLIC, el tribunal apelado concluyó correctamente que no había justa causa para despedir a la Sa. Hernández por ella alegadamente mercadear otros productos que no competían con los de TOLIC. ■

Al TOLIC no probar que existía justa causa para el despido, se activó la presunción de que el mismo fue discriminatorio. TOLIC no controvirtió esa presunción de discrimen. De los hechos que encontró probados el tribunal apelado se desprende que el Sr. Nicolás Touma pasó a ocupar el puesto de Director de Agencias que se creó cuando la compañía fue reorganizada. El señor Touma era *"sustancialmente más joven"* que la Sa. Hernández, quien para entonces tenía 60 años. Se comenzaron a hacer comentarios velados en torno a la edad de la Sa. Hernández. Esto fue corroborado por el testimonio de la agente Yasmín Belén y del señor Tirado, vicepresidente de TOLIC. Este último admitió, en por lo menos una ocasión, que hizo un comentario jocoso en torno a la edad de la Sa. Hernández, aunque lo justificó alegando que fue sin intención. ■

Los oficiales de TOLIC, en repetidas ocasiones, recomendaron a la Sa. Hernández que diera cabida en la dirección de su agencia a *"sangre joven"*, y que se asociara con una persona más joven en vista de su edad. Específicamente, el licenciado Claudio y el Sr. Tirado le sugirieron que se asociara con la agente Yasmín Belén *"por su juventud"*. Debido a la negativa de la Sa. Hernández, hubo un éxodo masivo de agentes luego de la reunión del 21 de noviembre de 1988. La Sa. Hernández continuó trabajando con sólo tres agentes, pero tuvo que trasladar las operaciones a su residencia en vista de que el volumen de ventas no era entonces suficiente para sufragar los gastos del local que había arrendado en Río Piedras. Poco después se hizo efectiva la terminación del contrato.

Concurrimos con la determinación del tribunal *a quo* en cuanto a la existencia de discrimen por parte de TOLIC. No hay duda de que la cadena de eventos que encontró probados el tribunal sentenciador constituyen un patrón de discrimen concertado por TOLIC para crear un ambiente de trabajo hostil contra la Sa. Hernández por razón de su edad, en contravención a la Ley Núm. 100, *supra. Rodríguez Meléndez v. Sup. Amigo Inc.,* 126 D.P.R. 117 (1990). El propósito evidente de TOLIC al sugerirle a la Sa. Hernández que invitara a los agentes a marcharse a otra agencia si no querían seguir trabajando con ella, a sabiendas de que TOLIC tenía entonces una política de no permitir a los agentes cambiar de agencia general, era dejar a la apelada sin agentes para que se viera obligada a renunciar o abandonar la agencia.

Es norma reiterada que los tribunales apelativos no deben sustituir las determinaciones de hechos de los tribunales de primera instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. La apreciación que haga el tribunal apelado de la prueba desfilada merece gran respeto y deferencia. *López Vicil v. I.T.T. Intermedia, Inc.,* ___ D.P.R. ___ (1997), **97 J.T.S. 42**; *Quiñones López v. Manzano Pozas,* ___ D.P.R. ___ (1996), **96 J.T.S. 95**; *Pueblo v. Maisonave Rodríguez,* ___ D.P.R. ___ (1991), **91 J.T.S. 67**; *Pueblo v. Pellot Pérez,* 121 D.P.R. 791 (1988). Ninguna de estas circunstancias está presente en el caso de autos, por lo que respetaremos las determinaciones hechas por el tribunal *a quo*.

Analicemos ahora si el cuarto error señalado se cometió. TOLIC alega que la compensación otorgada a la Sa. Hernández fue excesiva a la luz de los hechos del presente caso. Veamos.

Sabido es que, de ordinario, los tribunales de primera instancia están en una mejor posición que los tribunales apelativos para realizar la labor de estimación de daños, pues son los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. *Torres Solís v. A.E.E.,* ___ D.P.R. ___ (1994), **94 J.T.S. 89**; *Sanabria v. E.L.A.,* ___ D.P.R. ___ (1993), **93 J.T.S. 24**; *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443 (1985). Esta norma de abstención no es absoluta; ha de ceder cuando la suma concedida sea exageradamente alta o ridículamente baja. *Agosto Vázquez v. F.W. Woolworth & Co.,* ___ D.P.R. ___ (1997), **97 J.T.S. 56**; *Sanabria v. E.L.A., supra*.

La sección 146 de la Ley Núm. 100, *supra*, establece que el patrono que actúe en contravención a ese estatuto incurrirá en responsabilidad civil por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo. El tribunal *a quo* fijó esos daños en $40,000 en cuanto a la reclamación de la Sa. Hernández por las angustias y los sufrimientos emocionales que tuvo, y concedió una suma igual a ésta en virtud de lo dispuesto en la sección 146,

*supra*. Además, al amparo del Artículo 1802 del Código Civil, *supra*, le otorgó $5,000 al señor Galo Beltrán, esposo de la Sa. Hernández, por los sufrimientos que éste padeció. ■

En su recurso, TOLIC alega que la Sa. Hernández tenía problemas de salud, familiares y emocionales desde antes del despido los cuales le podían causar sufrimiento y que no surge de la sentencia apelada cómo el tribunal *a quo* separó este sufrimiento del otro causado por el despido. Lo alegado por TOLIC, sin embargo, no nos pone en posición de poder determinar que el tribunal se excedió en las cuantías concedidas por concepto de daños tanto a la Sa. Hernández como a su esposo por razón del despido discriminatorio. Confirmamos, pues, las compensaciones otorgadas por el tribunal *a quo*.

### III

Por los fundamentos antes expuestos, confirmamos la sentencia apelada.

Así lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 174

**1.** En la demanda se ejercitaban causas de acción bajo la Ley Núm. 75 de 29 de junio de 1969, según enmendada, 10 L.P.R.A. sec. 278 *et seq.*; la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185 *et seq.*; la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*, y la Age Discrimination in Employment Act of 1967, según enmendada, 29 U.S.C. sec. 621 *et seq.* No obstante, la apelada desistió posteriormente de la reclamación al amparo de la Ley Núm. 75, *supra*, y el tribunal *a quo* dictó sentencia parcial archivando esa causa de acción.

**2.** Véase el Apéndice del Escrito de Apelación, a la pág. 103.

**3.** *Id.*, a la pág. 100.

**4.** Véase el Apéndice del Escrito de Apelación, a la pág. 100.

**5.** Las secciones 185a a la 185l de la Ley Núm. 80, *supra*, tienen un propósito reparador para casos de despido sin justa causa. *Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522 (1985). Por otra parte, de la Exposición de Motivos de la Ley Núm. 100, *supra*, se desprende que el problema principal que inspiró al legislador a actuar fue el discrimen en el empleo de personas por razón de edad exclusivamente.

**6.** Véase nota al calce número 1.

**7.** Posterior a nuestra resolución de 11 de marzo de 1997 aceptando la exposición narrativa presentada por TOLIC, el Tribunal de Primera Instancia dictó una resolución el 25 de marzo de 1997 aprobando la exposición narrativa de la prueba. De ésta surge que poco después de que la Sa. Hernández manifestara su intención de vender los productos de American Life Insurance, sus agentes recibieron una carta mediante la cual TOLIC les cancelaba su contrato. Véase resolución de 25 de marzo de 1997, a las págs. 2-3.

**8.** La Ley Núm. 100, *supra*, no requiere probar intención para establecer una causa de acción por discrimen en el empleo.

**9.** El cónyuge y la sociedad legal de gananciales no tienen legitimación activa bajo la Ley Núm. 100, al no caer bajo la definición de empleado o de aquel individuo que puede elevar una acción bajo dicho estatuto. *Flamand v. American International Group Inc.*, 876 F. Supp. 356 (1994). No obstante, en *Santini v. Serv. Air Inc.*, ___ D.P.R. ___ (1994), **94 J.T.S. 121**, se resolvió que los parientes de un empleado que ha sido víctima de trato discriminatorio por su patrono bajo la Ley Núm. 100 tienen una causa de acción propia bajo el artículo 1802 del

Código Civil para obtener indemnización por los daños que ellos mismos hayan sufrido como consecuencia del referido discrimen laboral. En tales circunstancias, se compensarán los daños propios sufridos por los parientes, una vez quede establecido el trato discriminatorio en cuestión. Véase también *Maldonado v. Banco*, ___ D.P.R. ___ (1995), **95 J.T.S. 48.**